

(/)

Español (/es/node/5241)   About (/about-office)

News (/news)   Opinions (/attorney-general-opinions)

Jobs (/careers/job-listings)   Contact Us (/contact-us)



Menu

HOME (/)   >   NEWS (/NEWS)   >   NEWS RELEASES (/NEWS/RELEASES)   >
ATTORNEY GENERAL PAXTON INTERVENES IN TRAVIS COUNTY MARRIAGE CASE; REQUESTS STAY FROM TEXAS
SUPREME

**February 18, 2015** | **Marriage (/news/categories/marriage)**

# Attorney General Paxton Intervenes In Travis County Marriage Case; Requests Stay from Texas Supreme

**SHARE THIS:**                                    **0**

Texas Attorney General Ken Paxton today announced his office has
intervened in a Travis County probate case following a judge's
declaration that Texas' marriage law is unconstitutional. The State has
sought a stay by the Texas Supreme Court and has also asked the court to
overturn the judge's ruling. General Paxton issued the following
statement:

"Texas law is clear on the definition of marriage, and I will fight to protect
this sacred institution and uphold the will of Texans, who voted
overwhelmingly in favor of a constitutional amendment defining the
union as between one man and one woman. The probate judge's
misguided ruling does not change Texas law or allow the issuance of a
marriage license to anyone other than one man and one woman."

Langan 1


(/)

Español (/es/node/5246)   About (/about-office)

News (/news)   Opinions (/attorney-general-opinions)

Jobs (/careers/job-listings)   Contact Us (/contact-us)


Menu



HOME (/)   >   NEWS (/NEWS)   >   NEWS RELEASES (/NEWS/RELEASES)   >
ATTORNEY GENERAL PAXTON: ACTIVIST JUDGES DON'T CHANGE TEXAS LAW

February 19, 2015 | **Marriage (/news/categories/marriage)**

# Attorney General Paxton: Activist Judges Don't Change Texas Law

**SHARE THIS:**                                1

Texas Attorney General Ken Paxton continues to actively uphold Texas law in the face of unconstitutional actions taken by Travis County judges. The State has sought multiple stays from the Texas Supreme Court. General Paxton issued the following statement:

"The Texas Constitution clearly defines marriage as between one man and one woman, as Texas voters approved by an overwhelming majority. The law of Texas has not changed, and will not change due to the whims of any individual judge or county clerk operating on their own capacity anywhere in Texas. Activist judges don't change Texas law and we will continue to aggressively defend the laws of our state and will ensure that any licenses issued contrary to law are invalid."

A timeline of recent events relating to this issue:

- On Tuesday, a probate judge in Travis County acted without authority to unilaterally declare the Texas definition of marriage

Langan 2

unconstitutional in a private probate proceeding.

- On Tuesday night, the Attorney General intervened, requesting the Texas Supreme Court to stay and overturn that erroneous ruling. That request is still pending.

- On Thursday morning, a state district court judge, also in Travis County, declared the Texas definition of marriage unconstitutional and issued a temporary restraining order directing the Travis County clerk to issue a marriage license to a same-sex couple.

- The judge did not comply with Texas law, which requires the Attorney General to be notified whenever a state law is ruled unconstitutional.

- Pursuant to this judge's order, the Travis County Clerk unlawfully issued a marriage license to the same-sex couple, who subsequently took part in a ceremony.

- The Attorney General immediately intervened, asking the Texas Supreme Court to stay this proceeding, as well as any state court proceedings that seek to undermine the constitutionality of Texas' marriage law.

- In keeping with state law, the Attorney General is also seeking to void the marriage license issued due to the erroneous judicial order.

- The Attorney General is also filing suit enjoining the Travis County Clerk from issuing any same-sex marriage licenses.

Additionally, today the Attorney General filed a response in the U.S. Fifth Circuit Court of Appeals, following a request from plaintiffs in a separate case to lift the stay on the court's ruling on Texas' marriage laws. That case was argued in January.

View today's court filing with the Texas Supreme Court (/sites/default/files/files/press/MotionEmergencyRelief_FS.pdf)

*Receive email updates from the OAG Press Office:*

| Your Em |  **Submit**

 **KEN PAXTON**
ATTORNEY GENERAL *of* TEXAS

(/)

Español (/es/node/5256)   About (/about-office)

News (/news)   Opinions (/attorney-general-opinions)

Jobs (/careers/job-listings)   Contact Us (/contact-us)



 **Menu**

HOME (/)   >   NEWS (/NEWS)   >   NEWS RELEASES (/NEWS/RELEASES)   >
ATTORNEY GENERAL PAXTON SEEKS WRIT OF MANDAMUS FROM TEXAS SUPREME COURT

February 20, 2015 | **Marriage (/news/categories/marriage)**

# Attorney General Paxton Seeks Writ of Mandamus from Texas Supreme Court

**SHARE THIS:**                    **0**

Texas Attorney General Ken Paxton continues to actively uphold Texas law in the face of unlawful actions taken by Travis County judges, today filing a petition for a writ of mandamus with the Texas Supreme Court:

"The rogue actions of Travis County judges do not withstand the scrutiny of law. The same-sex marriage license issued yesterday is not valid because it conflicts with the Texas Constitution and State law—the license is therefore void ab initio.  The filing we made today with the Texas Supreme Court confirms these points."

View the petition for a writ of mandamus (/sites/default/files/files/press/15-0139_Mandamus_FS.pdf)

*Receive email updates from the OAG Press Office:*    | Your Em |    **Submit**

Langan 4

15-0139
3/6/2015 4:26:02 PM
tex-4408291
SUPREME COURT OF TEXAS
BLAKE A. HAWTHORNE, CLERK

No. 15-0139

# In the Supreme Court of Texas

IN RE STATE OF TEXAS,
*Relator*

On Petition for Writ of Mandamus to
167th Judicial District Court, Travis County, Texas

## AMENDED PETITION FOR WRIT OF MANDAMUS

KEN PAXTON
Attorney General of Texas

CHARLES E. ROY
First Assistant Attorney General

SCOTT A. KELLER
Solicitor General

BETH KLUSMANN
Assistant Solicitor General

MICHAEL P. MURPHY
Assistant Solicitor General
State Bar No. 24051097

OFFICE OF THE ATTORNEY GENERAL
P.O. Box 12548 (MC 059)
Austin, Texas  78711-2548
Tel.: (512) 936-2995
Fax: (512) 474-2697
*michaelp.murphy@texasattorneygeneral.gov*

COUNSEL FOR RELATOR

## IDENTITY OF PARTIES AND COUNSEL

***Relator***:  State of Texas

***Relator's Lead Counsel:***

Michael P. Murphy
State Bar No. 24051097
Assistant Solicitor General
*Michaelp.murphy@texasattorneygeneral.gov*

OFFICE OF THE ATTORNEY GENERAL
P.O. Box 12548 (MC 059)
Austin, Texas  78711-2548
Tel.: (512) 936-2995
Fax: (512) 474-2697

***Respondent***:
Hon. David Wahlberg
Judge of 167th District Court, Travis County, Texas
509 West 11th, 8th floor
Austin, TX 78701
Tel.: (512) 854-9310
Fax: (512) 854-6425

i

***Real Parties in Interest:***

Sarah Goodfriend
Suzanne Bryant

***Real Parties in Interest's Appellate and Trial Counsel***

| | |
|---|---|
| Kurt Kuhn | Charles Herring, Jr. |
| Lisa Bowlin Hobbs | Jess M. Irwin III |
| KUHN HOBBS PLLC | HERRING & IRWIN, LLP |
| 3307 Northland Drive, Suite 310 | 1411 West Ave., Ste. 100 |
| Austin, Texas 78731 | Austin, Texas 78701 |
| Tel.: (512) 476-6003 | Tel.: (512) 320-0665 |
| Fax: (512) 476-6002 | Fax: (512) 519-7580 |
| *Kurt@KuhnHobbs.com* | *cherring@herring-irwin.com* |
| *Lisa@KuhnHobbs.com* | *jess@herring-irwin.com* |
| | |
| Brian T. Thompson | Catherine A. Mauzy |
| Craig Hopper | MAUZY & TUCKER PLLC |
| HOPPER MIKESKA, PLLC | 1717 West 6th St., #315 |
| 400 W. 15th Street, Suite 408 | Austin, Texas 78703 |
| Austin, Texas 78701 | Tel.: (512) 474-1493 |
| Tel.: (512) 615-6195 | Fax: (512) 479-7910 |
| Fax: (512) 610-1306 | *cam@mauzylaw.com* |
| *bthompson@hoppermikeska.com* | |

# TABLE OF CONTENTS

Identity of Parties and Counsel ................................................................. i

Index of Authorities.................................................................................. v

Statement of the Case ....................................................................... viiviii

Statement of Jurisdiction.......................................................................iix

Issues Presented......................................................................................x

Statement of Facts ................................................................................. 3

Argument............................................................................................... 6

    I.    The Trial Court Abused Its Discretion in Multiple
        Ways ....................................................................... 7

        A.    The Trial Court Abused Its Discretion by Holding
            Texas Marriage Law Unconstitutional Without
            First Notifying the Attorney General............................ 7

        B.    The Trial Court Abused Its Discretion by Holding
            Texas Marriage Law Unconstitutional and
            Enjoining Its Enforcement While Those Laws Are
            Under Review in the Court. ........................................ 9

        C.    The Trial Court Abused Its Discretion by
            Drastically Altering, Rather than Preserving, the
            Status Quo. ............................................................ 11

        D.    The Trial Court Abused Its Discretion by
            Effectively Granting Final Relief in a TRO ................ 12

        E.    The Trial Court Abused Its Discretion by Granting
            Ex Parte Relief in Violation of Local Rules. ............... 14

    II.    The TRO Is Void Because Notice Was Neither Given nor
        Excused................................................................ 14

Langan 8

A. The Trial Court Failed to State Why the TRO Was Granted Without Notice.................................................15

B. The Plaintiffs Failed to Show an Emergency That Prevented Them from Giving Notice. ...........................16

C. The Marriage License Is Also Void.............................17

III. The Plaintiffs Cannot Evade the Court's Review with a Nonsuit. ...................................................................................18

A. The Nonsuit Was Invalid Because the Trial Court Purported to Adjudicate the Plaintiffs' Claim in the TRO. ........................................................................19

B. The Plaintiffs' and the Trial Court's Improper Actions Are Capable of Repetition Yet Would Evade Review if the Nonsuit Mooted the Mandamus Proceeding................................................19

IV. Absent Mandamus Relief, the Trial Court's Order Threatens Continued Serious, Imminent Harm. .................21

V. There Is No Adequate Remedy by Appeal............................22

Prayer .................................................................................................22

Mandamus Certification ...................................................................24

Certificate of Service .......................................................................25

Certificate of Compliance ................................................................26

iv

## INDEX OF AUTHORITIES

### Cases

*Cannan v. Green Oaks Apts., Ltd.*,
  758 S.W.2d 753 (Tex. 1988) (per curiam) ......................................11

*Cash Am. Int'l Inc. v. Bennett*,
  35 S.W.3d 12 (Tex. 2000)................................................................18

*Dancy v. Daggett*,
  815 S.W.2d 548 (Tex. 1991)...........................................................14

*Edgewood Indep. Sch. Dist. v. Paiz*,
  856 S.W.2d 269 (Tex. App.—San Antonio 1993, no writ).............12

*Ex Parte Lo*,
  424 S.W.3d 10 (Tex. Crim. App. 2013)...........................................7

*Grigsby v. Reib*,
  153 S.W. 1124 (Tex. 1913).............................................................18

*Hyundai Motor Co. v. Alvarado*,
  892 S.W.2d 853 (Tex. 1995) (per curiam) ......................................19

*In re Allied Chemical Corp.*,
  227 S.W.3d 652 (Tex. 2007).....................................................20, 21

*In re Jorden*,
  249 S.W.3d 416 (Tex. 2008).....................................................6-7, 8

*In re Marriage of A.L.F.L. and K.L.L.*, No. 04-14-00364-CV,
  2014 WL 4357457 (Tex. App.—San Antonio, August 13,
  2014) ..............................................................................................11

*In re Marriage of J.B. & H.B.*,
  326 S.W.3d 654 (Tex. App.—Dallas 2010, pet. granted) ..... 3, 10, 11

*In re Newton*,
  146 S.W.3d 648 (Tex. 2004)...................................... x, 11, 12, 13, 22

v

*In re Office of Attorney Gen.*,
    257 S.W.3d 695 (Tex. 2008)..................................................14, 15, 22

*In re Prudential Ins. Co. v. Am.*,
    148 S.W.3d 124 (Tex. 2004).....................................................6, 7, 8

*In re State*,
    No. 04-14-00282-CV, 2014 WL 2443910 (Tex. App. —
    San Antonio, May 28, 2014, orig. proceeding)......................7, 8, 10

*In re Tex. Nat. Res. Conservation Comm'n*,
    85 S.W.3d 201 (Tex. 2002)............................................................14

*Janus Films, Inc. v. City of Fort Worth*,
    358 S.W.2d 589 (1962) (per curiam) ...........................................12

*Perry v. Del Rio*,
    66 S.W.3d 239 (Tex. 2001)............................................................10

*Sheffield v. Town of Duncanville*,
    236 S.W.2d 851 (Tex. Civ. App.—Dallas 1951,
    writ refused n.r.e.).........................................................................13

*Terrazas v. Ramirez*,
    829 S.W.2d 712 (Tex. 1991)............................................................3

*Walker v. Packer*,
    827 S.W.2d 833 (Tex. 1992)............................................................6

## Constitutional Provisions and Statutes

TEX. CONST. art I, § 32..................................................viii, ix, x, 1, 3, 5, 10

TEX. FAM. CODE § 2.001 .....................................................viii, ix, x, 1, 3, 5

TEX. FAM. CODE § 2.012 .....................................................viii, ix, x, 1, 3, 5

TEX. FAM. CODE § 6.204 ..................................................viii, ix, 1, 3, 5, 10

TEX. FAM. CODE § 6.204(b)................................................................x, 17

TEX. GOV'T CODE § 22.002(a) .......................................................................ix

TEX. GOV'T CODE § 402.010...................................................................x, 3, 7

TEX. GOV'T CODE § 402.010(a) ...........................................................7, 9, 16

**Rules**

TEX. R. APP. P. 52.1.......................................................................................ix

TEX. R. APP. P. 52...........................................................................................1

TEX. R. CIV. P. 21 ...........................................................................................4

TEX. R. CIV. P. 21(f)(1)....................................................................................4

TEX. R. CIV. P. 680 ...............................................................xi, 3, 14, 15, 16

Travis Cnty. Dist. Ct. Loc. R. 7.2 .................................................xi, 4, 14

**Other Authorities**

Angela Morris, *The Wedding Planner: A Step-by-Step Legal
     Analysis of State's First Same-Sex Marriage*, TEXAS
     LAWYER, March 2, 2014, *available at*
     http://bit.ly/1BDR6MJ ...............................................................4, 17

Chuck Lindell, *Travis County Clerk Issues First Legal Gay
     Marriage License in Texas*, AUSTIN AMERICAN-
     STATESMAN, Feb. 19, 2015, *available at*
     http://atxne.ws/17vl7lo ...................................................................5

Chuck Lindell, *Video Interview of Sarah Goodfriend and
     Suzanne Bryant* at 5:00-5:39; 29:39-29:58, AUSTIN
     AMERICAN-STATESMAN, Feb. 23, 2015,
     http://atxne.ws/1BmreXa ............................................................17

Langan 12

## STATEMENT OF THE CASE

| | |
|---|---|
| **Nature of the Case:** | This mandamus proceeding challenges an unappealable temporary restraining order holding Article I, section 32 of the Texas Constitution and Texas Family Code sections 2.001, 2.012, and 6.204 unconstitutional. |
| **Respondent:** | Hon. David Wahlberg<br>Judge of 167th District Court, Travis County, Texas |
| **Course of Proceedings And Respondent's Challenged Action:** | This mandamus petition arises from a lawsuit seeking a TRO, preliminary injunction, and permanent injunction to declare unconstitutional Article I, section 32 of the Texas Constitution and Texas Family Code sections 2.001, 2.012, and 6.204 and allow Travis County Clerk Dana DeBeauvoir to issue a marriage license to Real Parties in Interest Sarah Goodfriend and Suzanne Bryant. Within minutes of the lawsuit being filed, the trial court granted a TRO, ruling that Article I, section 32 of the Texas Constitution and Texas Family Code sections 2.001, 2.012, and 6.204 are unconstitutional, and commanding the county clerk to cease and desist from complying with the law. The court also waived the 72-hour waiting period for marriage licenses. That same morning, DeBeauvoir issued a marriage license. A few hours later, the plaintiffs nonsuited their case because they had "realized their dream to be married." Later that day, the Court issued a temporary order staying the trial court's order. |

Langan 13

## STATEMENT OF JURISDICTION

The Court has original jurisdiction to issue the requested writ of mandamus because the State seeks to mandamus a district court judge. *See* TEX. GOV'T CODE § 22.002(a); TEX. R. APP. P. 52.1.

This petition was not first presented to the court of appeals due to the extremely time-sensitive nature of this matter and the serious harm that could arise absent prompt relief. The trial court, in an ex parte TRO, ruled that Article I, section 32 of the Texas Constitution and Texas Family Code sections 2.001, 2.012, and 6.204 are unconstitutional and issued an order allowing the Travis County Clerk to issue a marriage license to the plaintiffs. MR Tab C. This ruling may inspire same-sex couples to seek similar relief across the State. If that occurred, the harm to the couples, state officials, and the general public would be difficult if not impossible to undo. Although the Court has now stayed the TRO, mandamus relief is necessary to make clear that the trial court's TRO was an abuse of discretion and is void, as is the plaintiffs' marriage license.

ix

ISSUES PRESENTED

1.    Trial courts are required to notify the Attorney General of a constitutional challenge to Texas law before holding the law unconstitutional.  TEX. GOV'T CODE § 402.010.

**Was it an abuse of discretion for the trial court to hold Texas marriage law unconstitutional and enjoin its enforcement without first notifying the Attorney General of this constitutional challenge?**

2.    Article I, section 32 of the Texas Constitution defines marriage in Texas as only "the union of one man and one woman."  Texas Family Code section 2.001 prohibits issuance of a marriage license for "persons of the same sex"; section 2.012 declares that it is a misdemeanor for a county clerk to violate Texas marriage law; and section 6.204(b) declares any marriage between persons of the same sex void.

**Was it an abuse of discretion for the trial court to hold these laws unconstitutional and command the county clerk to cease and desist applying them when the validity of these laws is under review in the Court?**

3.    The purpose of a TRO is to preserve the status quo to allow time for an adjudication of the dispute on the merits; it should not grant final relief.  *In re Newton*, 146 S.W.3d 648, 652 (Tex. 2004).

**Was it an abuse of discretion for the trial court to issue a TRO that drastically altered the status quo and effectively granted final relief by purporting to invalidate longstanding Texas marriage law?**

x

4.    The plaintiffs requested an ex parte TRO from a criminal court, not the duty judge, even though Travis County Local Rule 7.2 mandates that "[r]equests for ex parte relief or any other emergency matter . . . must be presented to the Duty Judge."

**Was it an abuse of discretion for the trial court judge—who was not the duty judge—to grant an ex parte TRO?**

5.    A TRO requires, among other things, a showing of immediate and irreparable injury and it must explain why it is issued without notice. Tex. R. Civ. P. 680.

**Was the TRO void, given that the plaintiffs failed to show immediate and irreparable injury as a matter of law and the TRO does not explain why it was issued without notice?**

No. 15-0139

# In the Supreme Court of Texas

IN RE STATE OF TEXAS,
*Relator*

On Petition for Writ of Mandamus to
167th Judicial District Court, Travis County, Texas

## AMENDED PETITION FOR WRIT OF MANDAMUS

TO THE HONORABLE SUPREME COURT OF TEXAS:

Pursuant to Rule 52 of the Texas Rules of Appellate Procedure, the State of Texas seeks relief from a TRO, issued ex parte, holding that Article I, section 32 of the Texas Constitution and Texas Family Code sections 2.001, 2.012, and 6.204 violate "the Due Process Clause and the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution." MR Tab C at 1. The trial court abused its discretion by (1) holding Texas law unconstitutional without first notifying the Texas Attorney General, as required by statute; (2) failing to wait for the Court's forthcoming resolution of the constitutional issues; (3) drastically altering the status quo rather than preserving it; (4) effectively granting final relief to the plaintiffs before the adverse parties

were even notified; and (5) granting an ex parte TRO while not acting as the duty judge, in violation of the local rules. Not only was the issuance of the TRO an abuse of discretion, the TRO itself was void because it violated mandatory procedural requirements.

As a result of the trial court's erroneous ruling, at least one same-sex couple has been issued a void marriage license, and the state of the law in Texas has been needlessly cast into doubt. Relief from the Court is necessary to avoid the legal chaos that would follow if the trial court's ruling is seen as a model for other courts to follow or mistakenly interpreted as authorization for the creation or recognition of same-sex marriages in Travis County or throughout the State. Relief is also necessary to make clear that the Court will not tolerate the misuse of the judicial process on display in this case.

There is no adequate appellate remedy, given that a TRO is unappealable. The Court should (1) grant the petition for writ of mandamus; (2) order the trial court to vacate its ruling that Texas marriage law is unconstitutional (or at the very least stay the ruling pending the Court's resolution of the constitutional issues); (3) confirm that any marriage license issued pursuant to the trial court's improper

order was void ab initio; and (4) clarify that it is an abuse of discretion for any state court to hold Texas marriage law unconstitutional or enjoin enforcement of that law while those issues are under review in the Court and the United States Supreme Court.

## STATEMENT OF FACTS

At 8:52 a.m. on February 19, 2015, Sarah Goodfriend and Suzanne Bryant (the plaintiffs), hand filed a lawsuit in a Travis County criminal court challenging the constitutionality of Article I, section 32 of the Texas Constitution and Texas Family Code sections 2.001, 2.012, and 6.204. MR Tab A. The plaintiffs requested a temporary restraining order, a preliminary injunction, and a permanent injunction against the enforcement of Texas marriage law so that Travis County Clerk DeBeauvoir could issue them a marriage license.  MR Tab A.  The plaintiffs' request was ex parte; no notice was given to the county clerk or the Attorney General.[1]   Although an ex parte TRO requires an emergency, Tex. R. Civ. P. 680, the plaintiffs did not allege facts sufficient

---

[1] Because the plaintiffs challenged the constitutionality of Texas marriage law, the Attorney General was entitled to notice.  *See* TEX. GOV'T CODE § 402.010.  The State has a justiciable interest in the case given its well-recognized interest in defending Texas law.  *Terrazas v. Ramirez*, 829 S.W.2d 712, 721-22 (Tex. 1991); *In re Marriage of J.B. & H.B.*, 326 S.W.3d 654, 661 (Tex. App.—Dallas 2010, pet. granted).

to demonstrate an emergency and provided no explanation for why there was not time to notify the adverse parties.  MR Tab A.

And although Travis County Local Rule 7.2 states that "[r]equests for ex parte relief or any other emergency matter . . . must be presented to the Duty Judge," the plaintiffs did not present their application for a TRO to the Duty Judge (Judge Stephen Yelenosky, that day).  Instead, the plaintiffs' counsel, Charles Herring, "said he called three judges before he found one—167th Criminal District Judge David Wahlberg— who could arrive at the Austin courthouse by 8:30 a.m. on Feb. 19." Angela Morris, *The Wedding Planner: A Step-by-Step Legal Analysis of State's First Same-Sex Marriage*, TEXAS LAWYER, March 2, 2014, *available at* http://bit.ly/1BDR6MJ.   And "'[r]ather than filing with the clerk," as required by Rule 21 of the Texas Rules of Civil Procedure "'we filed directly with the judge,' Herring recalled." *Id.*[2]

Judge Wahlberg, a criminal court judge, granted the TRO immediately,[3] holding that the "unconstitutional statutory and state

---

[2] The plaintiffs also filed by paper, contrary to the Court's mandate to file electronically. *See* Tex. R. Civ. P. 21(f)(1); Amended Order Requiring Electronic Filing in Certain Courts, Misc. Docket No. 13-9092 (Tex. June 24, 2013).

[3] The order is annotated with the same time as the plaintiffs' petition, 8:52 a.m.

4

constitutional prohibitions in Texas against same-sex marriage, including as set out in and applied through Texas Family Code §§ 2.001, 2.012, and 6.204, and in Article I, § 32 of the Texas Constitution" caused an "ongoing violation of [the plaintiffs'] rights under the Due Process Clause and the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution, through the denial of their vital, personal right to marry." MR Tab C at 1. The trial court did not explain why the TRO was granted without notice. *See id.* Rather, the court held that the plaintiffs were suffering an "immediate and irreparable" injury because their constitutional rights were being violated, and that "Goodfriend's health condition strongly militates in favor of issuing immediate relief." *Id.*

The trial court also waived the statutory 72-hour waiting period for a marriage license. MR Tab D. Later that morning, the county clerk issued a marriage license. *See* Chuck Lindell, *Travis County Clerk Issues First Legal Gay Marriage License in Texas*, AUSTIN AMERICAN-STATESMAN, Feb. 19, 2015, http://atxne.ws/17vl7lo.

The Attorney General was not notified of the plaintiffs' constitutional challenge, but learned of the action only because the

5

county clerk notified a federal district court of the TRO in an unrelated same-sex marriage case.  MR Tab G.  Upon learning of the order, the State immediately intervened in the case at 10:54 a.m., and sought emergency relief from the Court in a motion filed at 11:02 a.m.  The Court stayed the TRO later that afternoon, MR Tab F, and the State filed its original mandamus petition on February 20.

Unbeknownst to the State, however, at 11:53 a.m. on February 19, just three hours after filing their lawsuit, the plaintiffs nonsuited their case because "they now have realized their dream to be married."  MR Tab E.  The plaintiffs never notified the State, even though it had intervened, and the State learned of the nonsuit five days later, after receiving media inquiries about it.

## ARGUMENT

Mandamus relief is available when (1) a court abuses its discretion and (2) there is no adequate remedy by appeal.  *In re Prudential Ins. Co. v. Am.*, 148 S.W.3d 124, 135-36 & n.47 (Tex. 2004) (citing *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex. 1992)).  A trial court "has no discretion in determining what the law is or in applying the law to the facts, even if the law is somewhat unsettled."  *In re Jorden*, 249 S.W.3d 416, 424 (Tex.

2008) (footnote omitted).  Accordingly, an error of law constitutes a clear abuse of discretion.  *Id.*; *Prudential*, 148 S.W.3d at 135.

## I.    THE TRIAL COURT ABUSED ITS DISCRETION IN MULTIPLE WAYS.

### A.    The Trial Court Abused Its Discretion by Holding Texas Marriage Law Unconstitutional Without First Notifying the Attorney General.

The trial court's ruling was an abuse of discretion because it did not comply with statutory procedural requirements.  Texas law requires a party challenging the constitutionality of Texas law to file a form with the trial court advising it of the constitutional challenge, after which the trial court must notify the Attorney General.  TEX. GOV'T CODE § 402.010(a).[4]  "The purpose of this statute is to provide the attorney general with the opportunity to be heard on issues important to the laws of the state—the laws the attorney general's office is charged with defending and enforcing."  *In re State*, No. 04-14-00282-CV, 2014 WL 2443910, at *2 (Tex. App.—San Antonio, May 28, 2014, orig. proceeding).

---

[4] Although the Texas Court of Criminal Appeals held in a criminal case that section 402.010 violates separation of powers, *Ex Parte Lo*, 424 S.W.3d 10, 29 (Tex. Crim. App. 2013), that ruling does not apply in civil proceedings, *In re State*, No. 04-14-00282-CV, 2014 WL 2443910, at *2 (Tex. App.—San Antonio, May 28, 2014, orig. proceeding).

7

Neither the parties nor the trial court provided notice to the Attorney General of the constitutional challenge, the TRO, or the constitutional ruling against Texas law. Rather, the Attorney General learned of the ruling from a notice filed in an unrelated federal same-sex marriage lawsuit. MR Tab E. The trial court's failure to notify the Attorney General of the constitutional challenge violated section 402.010 and was therefore a clear abuse of discretion. *In re Jorden*, 249 S.W.3d at 424; *Prudential*, 148 S.W.3d at 135.

In a similar case, the San Antonio Court of Appeals granted mandamus relief when a trial court in a same-sex divorce case declared Texas marriage law unconstitutional without first notifying the Attorney General and providing an opportunity for the State to defend the law. *In re State*, 2014 WL 2443910, at *4 (holding that "the trial court abused its discretion in failing to provide notice to the attorney general of a constitutional challenge to Texas state laws" and ordering the trial court to vacate its order declaring Texas marriage law unconstitutional). The same reasoning applies here, and the trial court's erroneous ruling should be vacated.

The failure to give notice cannot be explained by lack of knowledge of the law, either, as the plaintiffs' counsel, Brian Thompson, was well aware of the notice requirement in section 402.010(a). Thompson represents a party challenging Texas marriage law in another case, and there he specifically cited section 402.010(a) and the need to give notice to the Attorney General as the basis for seeking a continuance.[5] MR Tab H at 14-15.

### B. The Trial Court Abused Its Discretion by Holding Texas Marriage Law Unconstitutional and Enjoining Its Enforcement While Those Laws Are Under Review in the Court.

The trial court also abused its discretion by purporting to invalidate Texas marriage law and commanding the county clerk to stop enforcing the law while the Court is considering the constitutionality of those laws. The Court should confirm that a lower court's failure to stay a constitutional ruling while that issue is pending in the Court is an abuse

---

[5] In that case, *Estate of Stella Marie Powell*, No. C-1-PB-14-001695 (Travis Cnty. Probate Ct. No. 1), the trial court held Texas marriage law unconstitutional in an interlocutory order, and a mandamus petition from that ruling is pending in the Court. *In re State of Texas*, No. 15-0135.

of discretion because it interferes with the Court's orderly and uniform resolution of constitutional issues in the State.

The constitutional issues addressed in the trial court's order are the same issues under review by the Court in *In re Marriage of J.B and H.B*, No. 11-0024, *State v. Naylor*, No. 11-0114, and *In re State of Texas*, No. 11-0222, all of which are fully briefed and were argued on November 5, 2013. Specifically, these cases address whether Article I, section 32 of the Texas Constitution and Texas Family Code section 6.204 violate the federal constitution. The trial court's refusal to stay its hand on these serious constitutional questions was an abuse of discretion. *Cf. Perry v. Del Rio*, 66 S.W.3d 239, 252 (Tex. 2001) ("As a rule, when cases involving the same subject matter are brought in different courts, the court with the first-filed case has dominant jurisdiction and should proceed, and the other cases should abate.").

This is not the first time a trial court improperly failed to wait for the Court's ruling on these issues. After the San Antonio Court of Appeals granted mandamus relief when a trial court declared Texas marriage law unconstitutional without first notifying the Attorney General, *In re State*, 2014 WL 2443910, that trial court again held Texas

marriage law unconstitutional.  As a result, the court of appeals stayed all trial court proceedings in that case because the issues were similar to those pending in *J.B. and H.B.* and *Naylor*.  *In re Marriage of A.L.F.L. and K.L.L.*, No. 04-14-00364-CV, 2014 WL 4357457 (Tex. App.—San Antonio, August 13, 2014).

The trial court's order is an abuse of discretion because it frustrates the Court's orderly resolution of these issues on a statewide basis.  The Court should make clear that no court should strike down as unconstitutional Texas marriage law without staying that ruling pending decisions from the United States Supreme Court and the Court.

## C.    The Trial Court Abused Its Discretion by Drastically Altering, Rather than Preserving, the Status Quo.

By purporting to strike down longstanding Texas law and authorize the plaintiffs to change their marital status in a TRO, the trial court abolished the status quo and thereby clearly abused its discretion.  "The purpose of a TRO is to preserve the status quo." *In re Newton*, 146 S.W.3d 648, 651 (Tex. 2004); *Cannan v. Green Oaks Apts., Ltd.*, 758 S.W.2d 753, 755 (Tex. 1988) (per curiam) ("The issuance of a temporary restraining order, like the issuance of a temporary injunction, is to maintain the status quo between the parties.").  Invalidating established law and

allowing the plaintiffs to affirmatively obtain a license otherwise forbidden by law is the exact opposite of preserving the status quo. Longstanding Texas law should not "be adjudicated illegal based merely on pleadings and a brief, non-evidentiary TRO hearing when substantial rights are involved and the issues are far from clear." *See Newton*, 146 S.W.3d at 651. The plaintiffs' and the trial court's use of the TRO as a sword rather than for its intended purpose as a temporary legal shield should not be tolerated.

### D.   The Trial Court Abused Its Discretion by Effectively Granting Final Relief in a TRO.

The trial court also abused its discretion by issuing a TRO that effectively granted final relief to the plaintiffs. It is an abuse of discretion for a trial court to make a final adjudication in a TRO or temporary injunction. *Newton*, 146 S.W.3d at 652; *Janus Films, Inc. v. City of Fort Worth*, 358 S.W.2d 589, 590 (1962) (per curiam) (explaining that granting a temporary injunction to require the issuance of a permit to show a film before the city could contest the matter would defeat the purpose of a temporary injunction proceeding); *Edgewood Indep. Sch. Dist. v. Paiz*, 856 S.W.2d 269, 271 (Tex. App.—San Antonio 1993, no writ) (holding that a temporary injunction reversing the status quo and "provid[ing] plaintiff

the complete relief he seeks" before the adverse party could contest the matter is an abuse of discretion); *Sheffield v. Town of Duncanville*, 236 S.W.2d 851, 852 (Tex. Civ. App.—Dallas 1951, writ refused n.r.e.) ("A temporary restraining order is not available where the effect of it would settle the controversy.").

In *Newton*, the trial court granted a TRO (after two days' notice) that adjudicated a violation of state law and barred the adverse party from participating in an election. 146 S.W.3d at 652. The trial court also set the hearing on the temporary injunction for the day after the election. The Court held that the trial court abused its discretion because it "essentially made a final, non-appealable adjudication" in a TRO. *Id.*

The trial court's actions here were even more egregious than in *Newton*. With no notice, the trial court purported to invalidate a provision of the State Constitution and multiple sections of the Family Code and authorized the plaintiffs to obtain a marriage license, contrary to Texas law. The fact that the plaintiffs nonsuited their case *hours* later—after "realiz[ing] their dream to be married"—confirms the impropriety of using an ex parte TRO as a vehicle for final relief and

13

vividly illustrates the legal mischief that could arise if other litigants and trial courts in Texas saw this approach as a model.

### E. The Trial Court Abused Its Discretion by Granting Ex Parte Relief in Violation of Local Rules.

It is an abuse of discretion for a trial court to violate procedural rules, including local court rules. *See, e.g.*, *Dancy v. Daggett*, 815 S.W.2d 548, 549 (Tex. 1991) (violation of local rules was abuse of discretion); *In re Tex. Nat. Res. Conservation Comm'n*, 85 S.W.3d 201, 205 (Tex. 2002) (violation of Texas Rules of Civil Procedure was abuse of discretion). The local rules in Travis County dictate that "[r]equests for ex parte relief or any other emergency matter . . . must be presented to the Duty Judge." Travis Cnty. Dist. Ct. Loc. R. 7.2. There are no exceptions to this rule. Nevertheless, the plaintiffs did not present their request for ex parte relief in this civil matter to the duty judge, but rather filed directly with a criminal court. By granting the ex parte TRO, the trial court violated Local Rule 7.2 and abused its discretion.

## II. THE TRO IS VOID BECAUSE NOTICE WAS NEITHER GIVEN NOR EXCUSED.

A TRO granted in noncompliance with the requirements of Rule 680 is void. *In re Office of Attorney Gen.*, 257 S.W.3d 695, 697 (Tex. 2008).

Langan 30

The TRO here is void because (1) the trial court failed to explain why the TRO was issued without notice, and (2) it was issued without a clear showing that immediate and irreparable injury excused notice to the adverse parties.

### A.    The Trial Court Failed to State Why the TRO Was Granted Without Notice.

The TRO is void because it failed to state "why the order was granted without notice." Tex. R. Civ. P. 680.   Regarding the purported emergency nature of the proceeding, the TRO merely stated that "Plaintiff Goodfriend's health condition strongly militates in favor of issuing immediate relief, before a hearing can be held on Plaintiffs' request for temporary injunction and before a final trial on the merits of permanent injunctive relief."   MR Tab C at 1-2.  The order made no mention of notice or why relief was required before notice could be given. Accordingly, the TRO violated the express requirements of Rule 680 and is void.  *See Office of Attorney Gen.*, 257 S.W.3d at 697 (deeming void TROs that "were granted ex parte but fail to explain why they were granted without notice").

15

### B.   The Plaintiffs Failed to Show an Emergency That Prevented Them from Giving Notice.

A trial court cannot issue an ex parte TRO "unless it clearly appears from specific facts shown by affidavit or by the verified complaint that immediate and irreparable injury, loss, or damage will result to the applicant before notice can be served and a hearing had thereon."  Tex. R. Civ. P. 680.  The TRO is void because the plaintiffs did not show, as a matter of law, that "immediate and irreparable" injury would befall them "before notice can be served and a hearing had" on the motion.

The plaintiffs did not even attempt to explain why there was no time for notice, and their only alleged "immediate and irreparable" injury was the denial of a marriage license, which was based on their contention that Texas marriage law is unconstitutional.  MR Tab C at 1.  That alleged injury cannot be "immediate and irreparable," however, because it is contingent on the Court or the United States Supreme Court recognizing a constitutional right to same-sex marriage.  The plaintiffs' constitutional claims therefore cannot excuse their failure to give notice.[6]

---

[6] In fact, the opposite is true.  *See* TEX. GOV'T CODE § 402.010(a) (requiring notice to the Attorney General of any constitutional challenge to Texas law).

16

The real emergency, as the plaintiffs and their attorney later admitted, was to obtain an invalid marriage license before they could be stopped.  The plaintiffs' counsel, Charles Herring, explained to the press that the urgency for seeking a swift ruling was out of fear that "our window of opportunity would close on Friday."   Angela Morris, *The Wedding Planner*, TEXAS LAWYER, March 2, 2014; *see also* Chuck Lindell, *Video Interview of Sarah Goodfriend and Suzanne Bryant* at 5:00-5:39; 29:39-29:58, AUSTIN AMERICAN-STATESMAN, Feb. 23, 2015, http://atxne.ws/1BmreXa (opining that the probate court's order in *Powell* created "a window of opportunity" to obtain a marriage license). The plaintiffs' counsel also erased any notion that there was no time to notify the State of their intent to seek a TRO when he admitted that they "worked all night on Feb. 17 and all day on Feb. 18 to prepare their pleadings and orders," which were filed on February 19.  Angela Morris, *The Wedding Planner*, TEXAS LAWYER, March 2, 2014.

## C.    The Marriage License Is Also Void.

Because the county clerk relied on a void TRO when issuing the marriage license, the marriage license itself is void.  Furthermore, Texas Family Code section 6.204(b) provides that "[a] marriage between

17

persons of the same sex . . . is contrary to the public policy of this state and is void in this state." By staying the trial court's order, the Court confirmed that this provision remains in effect, and that provision renders void any same-sex marriage in Texas, no matter when or where it was entered into.

Moreover, the trial court did not purport to strike down the common law of marriage in Texas, which has always limited marriage to one man and one woman. *See, e.g.*, *Grigsby v. Reib*, 153 S.W. 1124, 1130 (Tex. 1913) ("Marriage is not a contract, but a status created by mutual consent of one man and one woman."). When the Legislature began to codify the common law of marriage, it did not abrogate the background principle that marriage is limited to opposite-sex couples. *See Cash Am. Int'l Inc. v. Bennett*, 35 S.W.3d 12, 16 (Tex. 2000) (explaining that a statute abrogates the common law only when its express terms or necessary implications clearly indicate that intent).

## III. THE PLAINTIFFS CANNOT EVADE THE COURT'S REVIEW WITH A NONSUIT.

The plaintiffs may argue that their nonsuit moots this petition and insulates the invalid TRO from the Court's review. The plaintiffs would be wrong for at least two reasons. First, their nonsuit was invalid

18

because the trial court purported to adjudicate their claim in the TRO. Second, even if the nonsuit were legitimate, the plaintiffs' action is capable of repetition yet would evade review if their nonsuit were allowed to moot the mandamus proceeding.[7]

### A. The Nonsuit Was Invalid Because the Trial Court Purported to Adjudicate the Plaintiffs' Claim in the TRO.

A nonsuit may not be taken "[o]nce a judge announces a decision that adjudicates a claim." *Hyundai Motor Co. v. Alvarado*, 892 S.W.2d 853, 855 (Tex. 1995) (per curiam). Given the ultimate relief the TRO purported to provide, the plaintiffs cannot shield the trial court's constitutional adjudication from the Court's review by taking a nonsuit. *See id.* (holding that "[a] decision on the merits . . . is not vitiated" by a nonsuit).

### B. The Plaintiffs' and the Trial Court's Improper Actions Are Capable of Repetition Yet Would Evade Review if the Nonsuit Mooted the Mandamus Proceeding.

As the plaintiffs demonstrated here, it is possible to file a lawsuit, obtain an ex parte TRO that purports to invalidate Texas law, obtain a

---

[7] For the same reasons described here, the State's mandamus petition is not moot after March 5, when the TRO expires as a matter of law.

waiver of the 72-hour waiting period, obtain an invalid marriage license, exchange vows, and dismiss the lawsuit in a period of three hours.  Even if the State had been notified of the plaintiffs' action from the outset— and it was not—three hours is insufficient for the State to intervene, file a mandamus petition and emergency stay motion, and obtain a ruling from the Court.

The Court addressed similar manipulation of its mandamus jurisdiction in *In re Allied Chemical Corp.*, 227 S.W.3d 652, 655 (Tex. 2007).  There, the plaintiffs attempted to moot a consolidation order that was under review in a pending mandamus proceeding by seeking to deconsolidate the cases.  *Id.*  The Court refused to dismiss the mandamus petition, reasoning that "[t]he situation that gives rise to this proceeding is . . . fully capable of repetition," and that "if review can be evaded by the modification of orders pending mandamus proceedings, the defendants would be put to the repeated expense of seeking review only to have it denied by last-minute changes in the trial court's orders."  *Id.*

The situation presented in this case is likewise capable of repetition and will evade review if the Court acquiesces to the plaintiffs' legal maneuvers, which are even more troubling than those in *Allied*

20

*Chemical*.  There, the plaintiffs' actions gave the defendants much of the relief sought.  Here, however, the plaintiffs are attempting to render the TRO—and void marriage license—a *fait accompli*.  The Court should reject this misuse of the legal system and make clear that such action will not insulate orders from review.

## IV.  ABSENT MANDAMUS RELIEF, THE TRIAL COURT'S ORDER THREATENS CONTINUED SERIOUS, IMMINENT HARM.

Mandamus relief is necessary because the plaintiffs' and trial court's actions could cause a host of additional legal and practical problems that undermine the public interest in predictable and clear legal rules.  Parties, courts, and clerks may mistakenly believe that the plaintiffs' and the trial court's actions in the case are an acceptable way to litigate significant constitutional issues.  Also, other same-sex couples, courts, and county clerks may mistakenly believe that Texas's marriage laws have been invalidated, clearing the way for the erroneous issuance of other invalid same-sex marriage licenses in Travis County or throughout the State.

These problems are real, not theoretical.  As this case proves, a single court's erroneous ruling on Texas marriage law may be relied upon by other courts, counsel, and litigants seeking invalid marriage licenses.

21

The plaintiffs' scheme to obtain a marriage license began shortly after their counsel, Mr. Thompson, obtained a ruling on behalf of a different client in a probate proceeding that Texas marriage law was unconstitutional. Despite Mr. Thompson's assurances that it was "wholly speculative" that anyone would rely on the probate court's ruling, Response to Emergency Motion for Temporary Relief at 3, *In re Texas*, No. 15-0135 (Tex., filed Feb. 19, 2015), his clients in this case did exactly that, MR Tab A.

## V.  THERE IS NO ADEQUATE REMEDY BY APPEAL.

The Attorney General cannot challenge the trial court's erroneous constitutional ruling through the normal appellate process because "a temporary restraining order is generally not appealable." *Newton*, 146 S.W.3d at 652. Mandamus relief is therefore appropriate because there is no adequate appellate remedy. *Office of Attorney Gen.*, 257 S.W.3d at 698.

## PRAYER

The Court should grant the petition for writ of mandamus.

22

Respectfully submitted.


KEN PAXTON
Attorney General of Texas

CHARLES E. ROY
First Assistant Attorney General

SCOTT A. KELLER
Solicitor General

BETH KLUSMANN
Assistant Solicitor General

 /s/ Michael P. Murphy
MICHAEL P. MURPHY
Assistant Solicitor General
State Bar No. 24051097

OFFICE OF THE ATTORNEY GENERAL
P.O. Box 12548 (MC 059)
Austin, Texas  78711-2548
Tel.: (512) 936-2995
Fax: (512) 474-2697
*michaelp.murphy@texasattorneygeneral.gov*

COUNSEL FOR RELATOR


23

## MANDAMUS CERTIFICATION

Pursuant to Texas Rule of Appellate Procedure 52.3(j), I certify that I have reviewed this petition and that every factual statement in the petition is supported by competent evidence included in the appendix or record.   Pursuant to Rule 52.3(k)(l)(A), I certify that every document contained in the appendix is a true and correct copy

/s/  Michael P. Murphy
Michael P. Murphy
*Counsel for Relator*

24

## CERTIFICATE OF SERVICE

I certify that on March 6, 2015, the foregoing document was served via File & ServeXpress or electronic mail upon counsel for real parties in interest. A courtesy copy was also sent to counsel for real parties in interest by electronic mail.

Kurt Kuhn
Lisa Bowlin Hobbs
KUHN HOBBS PLLC
3307 Northland Drive, Suite 310
Austin, Texas 78731
Tel.: (512) 476-6003
Fax: (512) 476-6002
*Kurt@KuhnHobbs.com*
*Lisa @KuhnHobbs.com*

Charles Herring, Jr.
Jess M. Irwin III
HERRING & IRWIN, LLP
1411 West Ave., Ste. 100
Austin, Texas 78701
Tel.: (512) 320-0665
Fax: (512) 519-7580
*cherring@herring-irwin.com*
*jess@herring-irwin.com*

Brian T. Thompson
Craig Hopper
HOPPER MIKESKA, PLLC
400 W. 15th Street, Suite 408
Austin, Texas 78701
Tel.: (512) 615-6195
Fax: (512) 610-1306
*bthompson@hoppermikeska.com*

Catherine A. Mauzy
MAUZY & TUCKER PLLC
1717 West 6th St., #315
Austin, Texas 78703
Tel.: (512) 474-1493
Fax: (512) 479-7910
*cam@mauzylaw.com*

The Respondent was served a copy by U.S. Mail, sent March 6, 2015.

Hon. David Wahlberg
Judge of 167th District Court, Travis County, Texas
509 West 11th, 8th floor
Austin, TX 78701
Phone: (512) 854-9310
Fax: (512) 854-6425

RESPONDENT

/s/ Michael P. Murphy
Michael P. Murphy
*Counsel for Relator*

25

## CERTIFICATE OF COMPLIANCE

In compliance with Texas Rule of Appellate Procedure 9.4(i)(2), this brief contains 4,481 words, excluding the portions of the brief exempted by Rule 9.4(i)(1).

/s/  Michael P. Murphy
Michael P. Murphy
*Counsel for Relator*

26

# APPENDIX AND RECORD

**VERIFICATION**

THE STATE OF TEXAS   §
                          §
COUNTY OF TRAVIS   §

     Before me, the undersigned notary, on this day personally appeared Michael P. Murphy, a person whose identity is known to me.  After I administered an oath to him, upon his oath he said the following:

     "My name is Michael P. Murphy.  I am over twenty-one (21) years of age, of sound mind, and am capable of making this affidavit.  The facts stated in this affidavit are within my personal knowledge and are true and correct.  I am an attorney with the Office of the Solicitor General, Office of the Texas Attorney General, representing Relator The State of Texas.  I am licensed to practice in the State of Texas, and prepared, with co-counsel, the Amended Petition for Writ of Mandamus and mandamus record and appendix, attached to the Petition as the Appendix and Record.  All of the documents in the attached Appendix are true and correct copies of the documents identified or true and correct copies of the documents filed in this action, as those documents exist in our files or were transferred to me by co-counsel."

Signed this 6th day of March, 2015.

_____
Michael P. Murphy, Affiant

     SUBSCRIBED AND SWORN TO before me, the undersigned authority, on this 6th day of March, 2015.

_____
Notary Public in and for the State of Texas

My commission expires:   10/02/2018

> CECILIA ANN HERTEL
> Notary Public
> STATE OF TEXAS
> Commission Exp. OCT. 02, 2018
>
> **Notary without Bond**

## Index to Mandamus Appendix and Record

**TAB**

Plaintiffs' Original Petition and Application for
    Temporary Restraining Order.............................................................. A

Order Permitting Paper Filing ................................................................ B

Order Granting Temporary Restraining Order...................................... C

72 Hour Waiver Form ............................................................................. D

Plaintiffs' Notice of Nonsuit Without Prejudice
    Against Defendant............................................................................ E

Order from Texas Supreme Court Staying
    Temporary Restraining Order ......................................................... F

Letter to Judge Sparks in *Zahrn v. Abbott*............................................. G

Sonemaly Phrasavath's Response to Special Exceptions and Motion to
    Dismiss and Motion for Continuance............................................... H

A

NO. _____

| | | |
|---|---|---|
| SARAH GOODFRIEND AND<br>SUZANNE BRYANT | §<br>§<br>§ | IN THE DISTRICT COURT |
| PLAINTIFFS | §<br>§ | |
| VS. | §<br>§ | OF TRAVIS COUNTY, TEXAS |
| DANA DEBEAUVOIR, TRAVIS<br>COUNTY CLERK | §<br>§<br>§ | |
| DEFENDANT | §<br>§ | _____ JUDICIAL DISTRICT |

## PLAINTIFFS' ORIGINAL PETITION
## AND APPLICATION FOR TEMPORARY RESTRAINING ORDER

TO THE HONORABLE JUDGE OF SAID COURT:

Plaintiffs Sarah Goodfriend and Suzanne Bryant file this Original Petition and

Application for Injunctive Relief against Defendant Dana DeBeauvoir.

I.

Plaintiffs Goodfriend and Bryant are a same-sex couple who desire to get married. United

States District Judge Orlando Garcia has ruled that the Texas ban on same-sex marriages is

unconstitutional, illegal, and unenforceable. On February 17, 2015, the Honorable Guy Herman,

Probate Judge, Travis County, Texas, issued an Order expressly finding that Texas Family Code

§§ 2.401, and 6.204(b), and Article I, § 32 of the Texas Constitution "are unconstitutional insofar

as they restrict marriage in the State of Texas to the union of a man and woman and prohibit the

creation or recognition of marriage to same-sex couples, because such restrictions and

prohibitions violate the Due Process Clause and the Equal Protection Clause of the Fourteenth

Amendment to the United States Constitution." Plaintiffs have therefore asked Defendant

DeBeauvoir to issue a marriage license to allow Plaintiffs to marry. Based upon her concerns

about the Texas statutory and constitutional prohibitions against same-sex marriage—including Texas Family Code §§ 2.001, 2.012, and 6.204, and in Article I, § 32 of the Texas Constitution— Defendant DeBeauvoir has told Plaintiffs that she cannot issue them a marriage license, unless and until a Court orders her to do so. The denial of a marriage license, based on those statutory and constitutional prohibitions against same-sex marriage, violates Plaintiffs' constitutional rights under the Due Process and Equal Protection clauses of the United States Constitution. Accordingly, Plaintiffs request that this Court issue an immediate Temporary Restraining Order granting the relief necessary to allow Defendant DeBeauvoir to issue a marriage license.

## II.

As the United States Supreme Court has held, the "freedom to marry has long been recognized as one of the vital personal rights essential to the orderly pursuit of happiness by free men." *Loving v. Virginia*, 388 U.S. 1 (1967). The Texas statutory and constitutional prohibitions against same-sex marriage deny Plaintiffs the opportunity to exercise that fundamental personal freedom. Current Texas law promotes the view that same-sex relationships and families are inferior; discriminates against homosexuals; "demean[s]" Plaintiffs and other same-sex couples; and treats Plaintiffs and other same-sex couples as second-class citizens by "tell[ing] those couples, and all the world, that their . . . [prospective] marriages are unworthy of recognition." *See United States v. Windsor*, 133 S. Ct. 2675, 2693-96 (2013).

## III.

Plaintiffs' inability to obtain issuance of a marriage license is also causing Plaintiffs ongoing, irreparable loss of actual and potential benefits otherwise available under the law, including financial losses that are not capable of being calculated with reasonable certainty, and

including but not limited to depriving Plaintiffs of intestacy rights;[1] homestead rights;[2] the potential rights of spousal maintenance and community-property presumption;[3] right of a surviving spouse to pursue remedies for possible wrongful death; and spousal evidentiary privileges. Additionally, Plaintiff Goodfriend has been diagnosed with and received extensive treatment for ovarian cancer, a life-threatening illness, with all of the inevitable, attendant stress and disruption of life and family; thus, her future remains very uncertain.

IV.

Plaintiffs have no adequate remedy at law to obtain a marriage license and to remedy that ongoing violation of the United States Constitution. Unless this Court grants an immediate TRO, the violations of Plaintiffs' fundamental constitutional rights will continue on a daily basis, and will cause ongoing, imminent, and irreparable damage to Plaintiffs.

V.

Therefore, Plaintiffs request that this Court immediately (i) issue a Temporary Restraining Order to prevent the unconstitutional violation of Plaintiffs' right to obtain a marriage license; (ii) set a bond in accordance with Tex. R. Civ. P. 684; (iii) set this matter for Temporary Injunction hearing, and then for trial on Permanent Injunction hearing; and (iv) at the conclusion of such hearings, grant temporary and permanent injunctive relief, and grant all additional relief to which Plaintiffs are entitled.

Respectfully submitted,

HERRING & IRWIN, L.L.P.
1411 West Avenue, Suite 100
Austin, Texas  78701
(512) 320-0665

---

[1] Tex. Probate Code §§ 38, 45.
[2] Tex. Const., art. 16, § 52.
[3] Tex. Family Code §§ 3.003, 7.001, 7.003, 8.051.

(512) 519-7580 – FAX
Email: cherring@herring-irwin.com

By: _____

Charles Herring, Jr.
State Bar No. 09534100
Jess M. Irwin III
State Bar No. 104257

CATHERINE A. MAUZY
State Bar No. 13239400
Mauzy & Tucker PLLC
1717 West 6th Street, Suite 315
Austin, Texas 78703
(512) 474-1493
(512) 479-7910

Brian Thompson
State Bar No. 24051425
HOPPER MIKESKA, PLLC
400 West 15th Street, Suite 408
Austin, Texas 78701
(512) 615-6195
(512) 610-1306 – FAX
Email: bthompson@hoppermikeska.com

ATTORNEYS FOR PLAINTIFFS

## VERIFICATION

| THE STATE OF TEXAS | § |
| | § |
| COUNTY OF TRAVIS | § |

BEFORE ME, the undersigned Notary Public, on this day personally Sarah Goodfriend, who being by me duly sworn on her oath, deposed and said that she has read Plaintiffs' Original Petition and Application for Temporary Restraining Order, and that the facts stated therein are within her personal knowledge and are true and correct.

_Sarah Goodfriend_
Sarah Goodfriend

SUBSCRIBED AND SWORN TO BEFORE ME on this 18th day of February, 2015, to certify which witness my hand and official seal.

> NICOLE M. HALLIDAY
> Notary Public, State of Texas
> My Commission Expires
> March 22, 2018

_Nicole M. Halliday_
NOTARY PUBLIC – STATE OF TEXAS

My Commission Expires:
3-22-18

# B

*2-19-15*

*@ 8:51 AM*

NO. _____

| | | |
|---|---|---|
| SARAH GOODFRIEND AND SUZANNE BRYANT | § § | IN THE DISTRICT COURT |
| | § | |
| PLAINTIFFS | § | |
| | § | |
| VS. | § | OF TRAVIS COUNTY, TEXAS |
| | § | |
| DANA DEBEAUVOIR, TRAVIS COUNTY CLERK | § § | |
| | § | |
| DEFENDANT. | § | _____ JUDICIAL DISTRICT |

## ORDER

Plaintiffs Goodfriend and Bryant in the above-styled and numbered action are seeking an immediate Temporary Restraining Order to prohibit the defendant from continuing to enforce prohibitions against issuance of marriage licenses to same-sex persons. Given the time urgency, and the other circumstances in this case, and the ongoing violations of Plaintiffs' constitutional rights, the Court has concluded that good cause exists to allow filing of the pleadings in this matter in paper form, rather than by e-filing, and to permit filing directly with the Court in accordance with Tex. R. Civ. P. 21(f)(4)C) and 74.

It is so Ordered.

SIGNED this the ____ day of February, 2014.

_____
Judge Presiding

C

NO. _____

| | | |
|---|---|---|
| SARAH GOODFRIEND AND<br>SUZANNE BRYANT | § <br>§ <br>§ | IN THE DISTRICT COURT |
| PLAINTIFFS | § <br>§ | |
| VS. | § <br>§ | OF TRAVIS COUNTY, TEXAS |
| DANA DEBEAUVOIR, TRAVIS<br>COUNTY CLERK | § <br>§ <br>§ | |
| DEFENDANT. | § <br>§ | _____ JUDICIAL DISTRICT |

## ORDER

Plaintiffs Sarah Goodfriend and Suzanne Bryant have filed Plaintiffs' Original Petition and Application for Temporary Restraining Order, supported by affidavit, against Defendant Dana DeBeauvoir, the County Clerk of Travis County.

It clearly appears from the facts set forth in the Application that because of the current, unconstitutional statutory and state constitutional prohibitions in Texas against same-sex marriage, including as set out in and applied through Texas Family Code §§ 2.001, 2.012, and 6.204, and in Article I, § 32 of the Texas Constitution, Plaintiffs are unable to obtain issuance of a marriage license by Defendant DeBeauvoir.

The Court finds that unless the Court immediately issues a Temporary Restraining Order, the unconstitutional denial of a marriage license to Plaintiffs will cause immediate and irreparable damage to Plaintiffs, based solely on their status as a same-sex couple. That irreparable injury includes the ongoing violation of their rights under the Due Process Clause and the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution, through the denial of their vital, personal right to marry. Based on the Plaintiff's sworn pleading regarding the severity and uncertainty of Plaintiff Goodfriend's health condition, the Court finds

that Plaintiff Goodfriend's health condition strongly militates in favor of issuing immediate relief, before a hearing can be held on Plaintiffs' request for temporary injunction and before a final trial on the merits of permanent injunctive relief. Plaintiffs have no adequate remedy at law for the damage and the continuing harm that this course of action is causing them and will continue to cause them, and thus the only remedy available to Plaintiffs is the issuance of a temporary restraining order to prevent that ongoing unconstitutional denial of Plaintiffs' constitutional rights.

IT IS THEREFORE ORDERED that Defendant Dana DeBeauvoir, County Clerk of Travis County, is hereby commanded forthwith to cease and desist relying on the unconstitutional Texas prohibitions against same-sex marriage as a basis for not issuing a marriage license to Plaintiffs Sarah Goodfriend and Suzanne Bryant.

The clerk of this Court shall on the filing of the bond, as specified below, issue a temporary restraining order in conformity with the law and the terms of this Order.

This Order shall remain in place and effective for 14 calendar days after the date this Order is signed.

The Plaintiffs' request for temporary injunction shall be set for hearing on _3.5_, 2015, at _9:00 AM_

This Order shall not be effective unless and until Plaintiffs execute and file with the clerk a cash bond, in conformity with the law, in the amount of $ _100_.

SIGNED on _2-19_, 2015.

_____
PRESIDING JUDGE

D

Z.19.F
@8:59An



**DANA DeBEAUVOIR**
Travis County Clerk
(512) 854-9188
P. O. Box 149325, Austin, Texas 78714-9325
5501 Airport Blvd, Austin, Texas 78751
www.co.travis.tx.us

# 72 HOUR WAIVER FORM

On this the ___19___ day of ___Feb___ 201_5_ came to be

Heard the request of ___Sarah Goodfriend___ and

___Suzanne Bryant___ applicants, for an
order permitting their marriage ceremony to take place during the 72-
hour period immediately following the issuance of their marriage
license. The Court having heard their application, does find that there is
good cause for the marriage to take place during the aforementioned 72-
hour period. And so does order.

Judge and Court # ___167th District___

NOTE: This waiver form can be completed by any District Judge or
County Family Court Judge in Travis County. In Travis County, there
is a District Judge available to sign this form Monday – Friday between
8:30 to 9:20 am and 1:30 to 2:20 pm.

## KEEP THIS WITH YOUR MARRIAGE LICENSE!!!!!

Applicant's Address:_____

_____

_____

Marriage License Document # _____

After the ceremony has been performed, return this order with the
Marriage license to:

Travis County Clerk
P.O. Box 149325
Austin, Texas 78714-9325

Recording, Elections, Accounting,
and Administration Divisions
5501 Airport Blvd
Austin, Texas 78751

Misdemeanor Records, Civil/Probate,
and Records Management Divisions
Travis County Courthouse
1000 Guadalupe
Austin, Texas 78701

10/13/2008 08:55 FAX 5126514526                                    1C RECORDING

E

of Travis County, Texas

DC        BK15050 PG586

FEB 19 2015

At _____10:00_____ p.M.
Velva L. Price, District Clerk

NO. D-1-GN-15-000632

| | | |
|---|---|---|
| SARAH GOODFRIEND AND | § | IN THE DISTRICT COURT |
| SUZANNE BRYANT | § | |
| | § | |
| PLAINTIFFS | § | |
| | § | |
| | § | OF TRAVIS COUNTY, TEXAS |
| VS. | § | |
| | § | |
| DANA DEBEAUVOIR, TRAVIS | § | |
| COUNTY CLERK | § | |
| | § | |
| DEFENDANT | § | 126TH  JUDICIAL DISTRICT |

## PLAINTIFFS' NOTICE OF NONSUIT WITHOUT PREJUDICE AGAINST DEFENDANT

COME NOW, Plaintiffs, Sarah Goodfriend and Suzanne Bryant, on this date, February 19, 2015, and hereby give notice to this Court and to all parties to this suit that because they now have realized their dream to be married, they are hereby taking a Nonsuit Without Prejudice as to this case, against Defendant, Dana DeBeauvoir, Travis County Clerk, effective immediately on the filing of this notice.

Respectfully submitted,

HERRING & IRWIN, L.L.P.
1411 West Avenue, Suite 100
Austin, Texas  78701
(512) 320-0665
(512) 519-7580 – Fax

By: _____
        Charles Herring, Jr.
        State Bar No. 09534100
        Email: cherring@herring-irwin.com
        Jess M. Irwin III
        State Bar No. 10425700
        Email: jess@herring-irwin.com

DC          BK15050 PG587

CATHERINE A. MAUZY
State Bar No. 13239400
Mauzy & Tucker PLLC
1717 West 6th Street, Suite 315
Austin, Texas   78703
(512) 474-1493
(512) 479-7910

Brian Thompson
State Bar No. 24051425
HOPPER MIKESKA, PLLC
400 West 15th Street, Suite 408
Austin, Texas   78701
(512) 615-6195
(512) 610-1306 – FAX
Email: bthompson@hoppermikeska.com

ATTORNEYS FOR PLAINTIFFS

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing Nonsuit has been served on Ms. Sherine Thomas, Travis County Attorney's Office, 314 W. 11th Street, Suite 420, Austin, Texas 78701 by facsimile, on this 19th day of February, 2015.

Charles Herring, Jr.

F

# IN THE SUPREME COURT OF TEXAS

NO. 15-0139

IN RE STATE OF TEXAS, RELATOR

ON MOTION FOR TEMPORARY RELIEF

**ORDERED:**

1. Relator's emergency motion for temporary relief, filed February 19, 2015, is granted in part.  The trial court order dated February 19, 2015, styled *Sarah Goodfriend and Suzanne Bryant v. Dana DeBeauvoir, Travis County Clerk*, in the 167th District Court of Travis County, Texas, is stayed pending further order of this Court.

Done at the City of Austin, this February 19, 2015.

BLAKE A. HAWTHORNE, CLERK
SUPREME COURT OF TEXAS

BY CLAUDIA JENKS, CHIEF DEPUTY CLERK

G



**DAVID A. ESCAMILLA**
COUNTY ATTORNEY

STEPHEN H. CAPELLE
FIRST ASSISTANT

JAMES W. COLLINS
EXECUTIVE ASSISTANT

314 W. 11TH STREET
GRANGER BLDG., SUITE 500
AUSTIN, TEXAS 78701

P. O. BOX 1748
AUSTIN, TEXAS 78767

(512) 854-9513
FAX: (512) 854-4808

**LITIGATION DIVISION**

SHERINE E. THOMAS†
DIRECTOR

ANTHONY J. NELSON

LESLIE W. DIPPEL

LAURIE R. EISERLOH*

ANDREW M. WILLIAMS

PATRICK M. KELLY

AMY S. YBARRA

†MEMBER OF THE COLLEGE
OF THE STATE BAR
*BOARD CERTIFIED-LABOR & EMPLOYMENT
LAW AND PERSONAL INJURY TRIAL LAW-
TEXAS BOARD OF LEGAL SPECIALIZATION

February 19, 2015

VIA E-FILING
The Honorable Sam Sparks, US District Judge
501 West Fifth Street, Suite 4120
Austin, Texas 78701

Re: *Zahrn, et al, v. Abbott, et al.*; Civil Action No. 1:13-CV-00955-SS; In the United States District Court for the Western District of Texas, Austin Division

Dear Judge Sparks:

This letter is to advise you that this morning, the Travis County Clerk Dana Debeauvoir, was served with a State Court order from the 167th Judicial District Court, Travis County, Texas, signed by the Honorable Judge David Wahlberg.

The TRO commands Ms. Debeauvoir to immediately "cease and desist relying on the unconstitutional Texas prohibitions against same-sex marriage as a basis for not issuing a marriage license specifically to Plaintiffs Sarah Goodfriend and Suzanne Bryant," a same sex couple residing in Austin, Texas.

The 167th District Court issued this order in response to an application for an *ex parte* temporary restraining order by Plaintiffs Goodfriend and Bryant. Please see the attached petition and order. If you have any questions, please feel free to contact me at (512) 854-9513. I certify that this letter has been served on all counsel of record in the above-styled and numbered cause.

Sincerely,

*Sherine Thomas*

Sherine E. Thomas
Assistant County Attorney

cc: All counsel of record

SET/gh

ZAHRN: Advisory to the Court Letter:325094_1

H

Filed: 11/6/2014 5:23:19 PM
Dana DeBeauvoir
Travis County Clerk
C-1-PB-14-001695
Abram Gonzalez

**No. C-1-PB-14-001695**

| | | |
|---|---|---|
| **ESTATE OF** | § | **IN THE PROBATE COURT** |
| | § | |
| **STELLA MARIE POWELL,** | § | **NUMBER 1** |
| | § | |
| **DECEASED** | § | **TRAVIS COUNTY, TEXAS** |

## SONEMALY PHRASAVATH'S RESPONSE TO SPECIAL EXCEPTIONS AND MOTION TO DISMISS AND MOTION FOR CONTINUANCE

Sonemaly Phrasavath ("Sonemaly") hereby files this Response to the Special Exceptions and Motion to Dismiss filed by James Powell and Alice Huseman. Sonemaly also files, in the alternative, a Motion for Continuance. In support of her Response and the Motion for Continuance, Sonemaly would show the Court the following:

### I.
### Introduction

Stella Powell ("Stella"), the decedent herein, and Sonemaly were in a committed, same-sex relationship for approximately eight years and were married for almost six years. Like any other married couple, they resided in the same home, celebrated their love for each other before friends and family at a marriage ceremony, and lived openly as spouses. During Stella's final illness, Sonemaly cared for Stella at their home until Stella ultimately lost her battle with cancer at the much too young age of 53.

Sonemaly has filed an application for heirship in this matter as Stella's common law spouse. James Powell and Alice Huseman (collectively, "Movants"), who are Stella's surviving siblings, have filed special exceptions and a motion to dismiss Sonemaly's application based on Texas's laws banning the recognition of same-sex marriages. These laws, like those in many other states, have been struck down since the United States Supreme Court's landmark decision

1



Case # C-1-PB-14-001695

Langan 67

in *U.S. v. Windsor*. In fact, since *Windsor*, the vast majority of courts to entertain a challenge to same-sex marriage bans have struck down such bans as unconstitutional. Sonemaly seeks the same remedy from this Court and asks that the Court deny Movants' special exceptions and motion to dismiss.

In the alternative, because Texas law requires that the Attorney General of Texas be given notice of Sonemaly's constitutional challenge to Texas's laws banning same-sex marriage, and because a judgment that these laws are unconstitutional cannot be given until 45 days after such notice is given, Sonemaly moves for a continuance of the hearing on Movants' special exceptions and motion to dismiss until such notice period passes.

## II.
## Facts

Sonemaly and Stella met in the summer of 2004 and began a romantic relationship in the summer of 2006. In April 2007, they traveled to Maui, Hawaii, and Sonemaly proposed to Stella on the peak of Mount Haleakala. In May 2007, the couple hosted a party to celebrate their engagement before family and friends. Shortly afterwards, the couple began living together in Austin.

On April 3, 2008, Sonemaly and Stella were married at Chapel Dulciea in Driftwood, Texas. Zen Priest Barbara Kohen officiated the marriage, which was attended by a small group of friends and family. Thereafter, Stella and Sonemaly executed declarations stating that they, among other things, were each other's domestic partner, were living in an intimate and committed relationship, were residing together, and were jointly financially responsible for each other's basic living expenses. In fact, the couple began living together shortly after their engagement and cohabitated until Stella's death in the summer of 2014.

2

In October 2013, Stella was diagnosed with colon cancer. During Stella's battle with the disease, Sonemaly acted as Stella's medical power of attorney, cared for her at their home, and accompanied her to treatments in Houston at M.D. Anderson and in Austin. Unfortunately, on June 21, 2014, Stella succumbed to cancer at the age of 53.

After Stella's death, Sonemaly and Movants discussed settling Stella's estate based on the terms of a will that Stella had drafted shortly before her death but had never executed. When these discussions were unsuccessful, Movants filed their Application for Determination of Heirship, which states that Stella was never married and does not even mention Sonemaly's name. Since that filing, Sonemaly has filed a contest to Movants' application and a competing application as Stella's common law spouse.

On October 15, 2014, Movants filed their Special Exceptions and Motion to Dismiss (the "Special Exceptions") Sonemaly's heirship application arguing that Stella's marriage to Sonemaly should not be recognized by this Court because of Texas's laws banning same-sex marriage. Movants' Special Exceptions omit the glaring fact that this ban has been struck down as unconstitutional by the Federal District Court for the Western District of Texas in the case of *DeLeon v. Perry*, 975 F.Supp.2d 632 (W.D. Tex. 2014). *DeLeon* follows the holdings of the vast majority of courts to entertain a challenge to state bans on same-sex marriage since the United States Supreme Court's decision in *Windsor*, wherein the Court held that the Federal Defense of Marriage Act's ("DOMA") limitation of marriage to opposite sex couples was unconstitutional. 133 S.Ct. 2675 (2013). Sonemaly now requests this Court to follow these holdings and rule that Texas's laws banning same-sex marriage are unconstitutional and, based on this holding, to deny Movants' Special Exceptions.

3

## III.
## Arguments and Authorities

### A.   The history of laws banning same-sex marriage in Texas.

Movants have cited to three Texas laws to support their argument that the Court should disregard Sonemaly and Stella's marriage: (1) Texas Family Code § 2.401 (limiting informal marriage to "marriage of a man and woman"); (2) Texas Family Code § 6.204(b) (stating that "[a] marriage between persons of the same sex…is void in this state"); and (3) Article I, § 32 of the Texas Constitution (stating that "[m]arriage in this state shall consist only of the union of one man and one woman….This state or a political subdivision of this state may not create or recognize any legal status identical or similar to marriage."). Sonemaly will refer to these laws collectively as "Texas's Ban."

The Texas Family Code was amended in 1973 after the unsuccessful attempts of a small number of gay and lesbian citizens to obtain marriage licenses. James W. Harper and George M. Clifton, Heterosexuality: A Prerequisite to Marriage in Texas? 14 SOUTH TEXAS L.J. 220 (1973). During the same period, same-sex couples in other states brought suits seeking to marry. *Jones v. Hallahan*, 501 S.W.2d 588 (Ky. Ct. App. 1973); *Baker v. Nelson*, 191 N.W.2d 185 (Minn. 1971), *aff'd*, 409 U.S. 810 (1972); *Anonymous v. Anonymous*, 325 N.Y.S.2d 499 (N.Y. Sup. Ct. 1971); *Singer v. Hara*, 522 P.2d 1187 (Wash. Ct. App. 1974). In reaction to these attempts, the Texas legislature amended the Texas Family Code to state that "a man and woman" rather than "persons" were entitled to obtain a marriage license and added, "[a] license may not be issued for the marriage of persons of the same sex." TEX. FAM. CODE § 1.01 (1973).

As a reaction to the Hawaii Supreme Court court's holding that same-sex couples had the right to marry under that state's law, Congress in 1996 enacted DOMA, which limited federal

4

recognition of marriage to only same-sex marriages, and numerous states followed with so-called "mini-DOMAs," which prohibited states from recognizing marriages between same-sex couples. *See* Jane S. Schacter, Courts and the Politics of Backlash, 82 S. CAL. L. REV. 1153, 1188-89 (Sept. 2009). These mini-DOMAs typically defined marriage as only between one man and one woman and prevented states from giving full faith and credit to same-sex marriages lawfully entered in other jurisdictions. Texas followed suit in 2003 with its own mini-DOMA by enacting Texas Family Code § 6.204, which voids all marriages and all civil unions between same-sex couples and prohibits state recognition of any such relationships. TEX. FAM. CODE § 6.204(b). It further prohibits the state from giving effect to any "legal protection, benefit, or responsibility" allegedly resulting from such marriages or civil unions. TEX. FAM. CODE § 6.204(c).

In 2005, Texas enshrined this law in the state constitution. The constitutional amendment was passed by referendum with approximately 76% of the vote. OFFICE OF TEXAS SECRETARY OF STATE, 2005 CONSTITUTIONAL AMENDMENT ELECTION, http://elections.sos.state.tx.us/elchist.exe (last visited November 4, 2014). As a result, Article I, § 32 of the Texas Constitution now states:

> (a) Marriage in this state shall consist only of the union of one man and one woman.
>
> (b) This state or a political subdivision of this state may not create or recognize any legal status identical or similar to marriage.

This discriminatory constitutional provision, as well as the other laws comprising Texas's Ban, cannot withstand constitutional scrutiny and should be disregarded in this matter. The Court should determine the question of whether Stella and Sonemaly's marriage should be recognized based on the laws governing informal marriage, not based on Texas's unjustifiable ban. This is especially evident in light of the United States Supreme Court's decision in *U.S. v. Windsor*.

5

**B.      The United States Supreme Court's Decision in *Windsor* and its effect on state laws banning same-sex marriage.**

In *Windsor*, plaintiff Edith Windsor challenged the provision of DOMA that defined "marriage" and "spouse" to exclude same-sex spouses. 133 S.Ct. 2675, 2682 (2013). Ms. Windsor had married Thea Spyer in Canada and that marriage was subsequently recognized in their home state of New York. *Id.* at 2683. Ms. Spyer died in 2009 and left her entire estate to Ms. Windsor. *Id.* But because of Section 3 of DOMA ("Section 3"), which defines "marriage" and "spouse" as excluding same-sex spouses for purposes of all federal statutes and regulations, Ms. Windsor could not qualify as Ms. Spyer's "surviving spouse" for purposes of the federal estate tax exemption. *Id.* As a result, Ms. Windsor was required to pay $363,053.00 in federal estate taxes that she otherwise would not have been required to pay if her marriage to Ms. Spyer was recognized under federal tax law. *Id.* Ms. Windsor challenged Section 3, a challenge that was eventually decided by the Supreme Court.

The Court's opinion, written by Justice Anthony Kennedy, invalidated Section 3 as unconstitutional under the Fifth Amendment's Due Process Clause. *Id.* at 2693. In reaching this holding, Justice Kennedy made the following statements regarding Section 3:

- Section 3's "principal purpose is to impose inequality, not for other reasons like government efficiency."

- Section 3 "tells those [same-sex] couples, and all the world, that their otherwise valid marriages are unworthy of federal recognition."

- Section 3 "demeans the couple, whose moral and sexual choices the Constitution protects." citing *Lawrence v. Texas*, 539 U.S. 558 (2003) (striking down Texas's sodomy laws as unconstitutional).

- Section 3 "humiliates tens of thousands of children now being raised by same-sex couples. The law in question makes it even more difficult for the children to

6

understand the integrity and closeness of their own family and its concord with other families in the community and in their daily lives."

- "Under DOMA, same-sex married couples have their lives burdened by reason of government decree, in visible and public ways."

*Id.* at 2694-95. The Court held that for these same reasons, Section 3 denied same-sex spouses equal protection of the laws guaranteed by the Fourteenth Amendment. *Id.* at 2695 ("[w]hile the Fifth Amendment itself withdraws from Government the power to degrade or demean the way [DOMA] does, the equal protection clause of the Fourteenth Amendment makes that Fifth Amendment right all the more specific and all the better understood and preserved.").

In a prophetic dissent concerning, in part, the breadth of Justice Kennedy's opinion, Justice Scalia reasoned that majority decision would be applied by lower courts to hold state bans on same sex marriage unconstitutional. *Id.* at 2709. To illustrate his point, Justice Scalia edited excerpts from Justice Kennedy's opinion to show how they might apply equally in a same-sex marriage ban case, including in the following example:

> [DOMA] *This state law* tells those couples, and all the world, that their otherwise valid marriages *relationships* are unworthy of federal *state* recognition. This places same-sex couples in an unstable position of being in a second-tier marriage *relationship*. The differentiation demeans the couple, whose moral and sexual choices the Constitution protects, *see Lawrence*.

*Id.* at 2709-10 (citing *id.* at 2694). Justice Scalia could not have been more accurate with his prediction, as court after court entertaining challenges to state law same-sex marriage bans have applied Justice Kennedy's opinion in *Windsor* to almost uniformly strike those bans down.

At the time of this writing, almost twenty reported decisions, including decisions by the Tenth, Fourth, Seventh and Ninth Circuit United States Courts of Appeals, have relied on *Windsor* to strike down state bans on same sex marriage as unconstitutional. *Bishop v. Smith*, 760

7

F.3d 1070 (10th Cir. 2014); *Kitchen v. Herbert*, 755 F.3d 1193 (10th Cir. 2014); *Bostic v. Schaefer*, 760 F.3d 352 (4th Cir. 2014); *Baskin v. Bogan*, 766 F.3d 648 (7th Cir. 2014); *Latta v. Otter*, ---F.3d---, 2014 WL 4977682 (9th Cir. 2014); *Marie v. Moser*, No. 2:14-cv-02518-DDC-TJJ, ---F.Supp.2d---- (D. Kan. 2014); *Bourke v. Beshear*, 996 F.Supp.2d 542 (W.D. Kent. 2014); *Love v. Beshear*, 989 F.Supp.2d 536 (W.D. Kent. 2014); *Gray v. Orr*, 4 F.Supp.3d 984 (N.D. Illinois 2014); *Brenner v. Scott*, 999 F.Supp.2d 1278 (N.D. Fla. 2014); *Hamby v. Parnell*, ---F.Supp.3d---, 2014 WL 5089399 (D. Alaska 2014); *Wolf v. Walker*, 986 F.Supp.2d 982 (W.D. Wisc. 2014); *Majors v. Jeanes*, ---F.Supp.3d---, 2014 WL 4541173 (D. Ariz. 2014); *Whitewood v. Wolf*, 992 F.Supp.2d 410 (M.D. Penn. 2014); *Geiger v. Kitzhaber*, 994 F.Supp.2d 1128 (D. Oregon 2014); *Henry v. Himes*, ---F.Supp.2d---, 2014 WL 1418395 (S.D. Ohio 2014); *Tanco v. Haslam*, 7 F.Supp.3d 759 (M.D. Tenn. 2014); *DeBoer v. Snyder*, 973 F.Supp.2d 757 (E.D. Michigan 2014); *Obergefell v. Wymyslo*, 962 F.Supp.2d 968 (S.D. Ohio 2013). Based on these and other decisions, as well as related legislative enactments, same-sex couples in 32 states and the District of Columbia now have the freedom to marry, and nearly 59% of the U.S. population lives in states currently issuing marriage licenses to same-sex couples. FREEDOM TO MARRY, http://www.freedomtomarry.org/states/ (last visited November 4, 2014). In fact, the undersigned has discovered only two reported cases since *Windsor* upholding a state's ban on same-sex marriage, and even these cases acknowledge the tidal wave of post-*Windsor* opinions striking down the bans. *See Robicheaux v. Caldwell*, 2 F.Supp.3d 910 (E.D. La. 2014) (acknowledging "the near-unanimity of the many other federal courts that have spoken on this pressing issue" and have declared same-sex marriage bans unconstitutional); *Vidal v. Garcia-Padilla*, ---F.Supp.3d---, 2014 WL 5361987 (D. P.R. 2014) (acknowledging that "[a] clear majority of courts have

8

struck down statutes that affirm opposite-gender marriage only). In contrast to these two opinions, since *Windsor* no circuit court of appeals has upheld such a ban. In sum, the effect of *Windsor* has been swift and resolute—*i.e.* based on the majority's reasoning in *Windsor*, state bans on same-sex marriage, including Texas's Ban, no longer pass constitutional muster.

**C.     The *DeLeon* decision.**

In *DeLeon v. Perry*, Judge Orlando Garcia of the United States District Court for the Western District of Texas—San Antonio Division, declared Texas's Ban unconstitutional. The plaintiffs in *DeLeon* were two married couples, one lesbian couple who had been married in Massachusetts and were seeking to have their marriage recognized in Texas, and one gay couple who had applied and been denied a Texas marriage license. 975 F.Supp.2d 632, 640-41 (W.D. Tex. 2014). The Defendants were various local and state officials defending Texas's Ban. *Id.* After reciting the history of same-sex marriage bans in the United States, including the enactment of Texas's Ban and DOMA, the Court highlighted the watershed decision in *Windsor*. *Id.* at 641-648. The court then considered the plaintiffs' challenges to Texas's Ban under the Equal Protection and Due Process Clauses of the Fourteenth Amendment to the U.S. Constitution. *Id.* at 649.

**1.     The *DeLeon* court's equal protection analysis.**

Beginning with its equal protection analysis, the court noted that "[t]he Equal Protection Clause of the Fourteenth Amendment commands that no state shall deny to any person within its jurisdiction the equal protection of the laws...This essentially means that all persons similarly situated shall be treated alike." *Id.* at 649 (citing U.S. Const. Amend. XIV § 1 and *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432 (1985)). Measured against the equal

9

protection clause, laws are subject to three levels of scrutiny: strict scrutiny, intermediate scrutiny, or rational basis review. *Id.* Although the plaintiffs urged the court to apply strict or intermediate scrutiny to Texas's Ban based on the history of state discrimination against homosexuals, the fact that sexual orientation is immutable, and that homosexuals are a minority with insufficient political power, the court found there was no need because the Ban could not satisfy even the most deferential rational basis level of review. *Id.* at 651-52.

Rational basis requires only that the law bear some rational relationship to a legitimate state interest. *Id.* at 652. The defendants identified two purported legitimate state interests furthered by Texas's Ban: 1) increasing the likelihood that a mother and father will be in charge of childrearing; and 2) encouraging stable family environments for responsible procreation. *Id.* at 653.

The court first rejected the defendants' claim that barring same-sex couples from marrying bears a rational relationship to furthering the welfare of children and childrearing. *Id.* Echoing Justice Kennedy in *Windsor*, the *DeLeon* court found that the ban actually injuries children and "causes needless stigmatization and humiliation for children being raised by the loving same-sex couples being targeted." *Id.* The court found that the defendants had failed to present any evidence that denying marriage to same-sex couples positively affects childrearing or evidence that recognizing a same-sex marriage could affect a heterosexual couple's decision to marry or raise a family. *Id.*

The court then assailed the defendants' procreation arguments by reasoning that "procreation is not and has never been a qualification for marriage," and noted that such a qualification would threaten "the legitimacy of marriages involving post-menopausal women,

10

infertile individuals, and individuals who choose to refrain from procreating." *Id.* at 654. Continuing on, Judge Garcia observed that "[p]ermitting same-sex couples to marry will not affect the number of opposite-sex couples who marry, divorce, cohabit, have children outside of marriage or otherwise affect the stability of opposite-sex marriage." *Id.* In fact, the court noted, Texas's Ban hinders stable environments for procreation by denying the children of same-sex couples the same stable family structure which the defendants praised in their arguments. *Id.* at 655. The court concluded this section by stating that "the argument that allowing same-sex couples to marry will undermine procreation is nothing more than an unsupported 'overbroad generalization' that cannot be a basis for upholding discriminatory legislation." *Id.*

Finally, the court dispensed with any argument that tradition, or more specifically the "traditional definition of marriage" is a reason for upholding Texas's Bans. *Id.* Citing *Lawrence*, the court noted that tradition alone can never be a reason to uphold a law under rational basis review. *Id.* As an example, Judge Garcia highlighted the U.S. Supreme Court's decision in *Loving v. Virginia*, which struck down state laws banning marriage between people of different races, and reasoned that "tradition alone cannot justify denying same-sex couples the right to marry any more than it could justify Virginia's ban on interracial marriage." *Id.* at 656 (citing *Bostic v. Rainey*, 970 F.Supp.2d 456 (E.D. Va. 2014)). The court concluded by holding that the defendants had failed to show any rational relationship between Texas's Ban and a legitimate governmental purpose and, therefore, the ban violated the plaintiffs' equal protection rights. *Id.*

## 2.    The *DeLeon* court's due process analysis.

After finding Texas's Ban unconstitutional as a violation of equal protection, Judge Garcia addressed the plaintiffs' argument that Texas's Ban was a violation of the Due Process

Clause of the Fourteenth Amendment, which guarantees that all citizens have certain fundamental rights. *Id*. The court first determined that, based on Supreme Court precedent, marriage is indeed a fundamental right that implicates the additional fundamental rights of privacy, liberty, and association, all of which are protected by the due process clause. *Id*. at 657-58. As such, the U.S. Supreme Court had historically invalidated state laws that infringe on an individual's right to marry, including most notably, in *Loving v. Virginia* when the Court struck down Virginia's ban on interracial marriage. *Id*. at 658. Because Texas's Ban "categorically den[ies] the fundamental right to marry to a class of citizens," the court applied strict scrutiny, which requires that the law be supported by a compelling state interest and be narrowly tailored to effectuate that interest. *Id*. at 659-60. The court concluded, without discussion, that the defendants had failed to satisfy this difficult burden and concluded that Texas's Ban was unconstitutional under the due process clause of the Fourteenth Amendment.[1]

The *DeLeon* court concluded by holding that Texas's Ban was unconstitutional because it violates the plaintiffs' equal protection and due process rights under the Fourteenth Amendment to the United States Constitution. *Id*. at 666. The court then stayed its decision, which included an injunction barring enforcement of the Texas's Ban, pending the final disposition of an appeal to the Fifth Circuit Court of Appeals. *Id*.

**D.    Texas's ban on same-sex marriage is unconstitutional.**

Based on the holding in *DeLeon*, which is from the federal district covering this jurisdiction, as well as the holdings of the numerous other courts who have entertained

---

1 The *DeLeon* court went on to hold that Texas's failure to recognize same-sex marriages recognized in other jurisdictions was unconstitutional, but because that discussion is inapplicable to this case and for the sake of brevity this discussion has been excluded from this response.

challenges to state laws banning same-sex marriage in the aftermath of *Windsor*, Texas's Ban is unconstitutional. Assuming that the Movants here will offer the same three justifications for the Ban that were discussed in *DeLeon*—*i.e.* that the Ban 1) increases the likelihood that a mother and father will be in charge of childrearing; 2) encourages stable family environments for responsible procreation; and 3) is justified based on tradition—the failure of these reasons to reach the level of a "rational basis" for the Ban is even more stark in this case than in *DeLeon*.

How could this Court's recognition of the marriage between Stella and Sonemaly, which would allow Sonemaly to participate in all the benefits of a surviving spouse, somehow affect anyone's decision regarding how to rear their children or procreate? The only effect of recognition in this case would be to provide Sonemaly with the rights of an heir, something this court does every day without paying regard to the sex of the decedent or the heir and without any effect on anyone else's decision regarding how to rear their family. And as the *DeLeon* court noted, tradition alone is no justification for Texas's Ban.

Failing to recognize the marriage between Stella and Sonemaly would only magnify the same discriminatory and deleterious effects that Justice Kennedy warned of in *Windsor*. Could there be any more "visible and public" burden than, in your time of mourning for your deceased spouse, having your spouse's family and the State of Texas fail to recognize your marriage and fight to have it invalidated? Is there anything more demeaning or unequal than having the state in which you and your spouse lived for years suggest that your otherwise valid marriage is unworthy of recognition simply because you are of the same sex? And although Stella and Sonemaly never had children, imagine the effects of non-recognition on the surviving children of a same-sex couple, effects which would surely make it "even more difficult for the children to

13

understand the integrity and closeness of their own family and its concord with other families in the community and in their daily lives." *See Windsor*, 133 S.Ct. at 2694.

The Texas Ban is blatant discrimination that has no rational relationship to any legitimate government interest. Its application in this case would not only be unconstitutional, it would be cruel. This Court should follow the holdings of almost every other jurisdiction to hear a challenge to state laws banning same-sex marriage post-*Windsor* and hold that Texas's Ban is unconstitutional and deny Movants' Special Exceptions.

## IV.
## Alternative Motion for Continuance

In the alternative to denying Movants' Special Exceptions and holding Texas's Ban unconstitutional at this time, Sonemaly requests that the Court continue the hearing on this matter until the Texas Attorney General can be given notice as required under Texas Government Code § 402.010. That section requires that "[i]n an action in which a party to the litigation files a...pleading challenging the constitutionality of a statute of this state...[t]he court shall, if the attorney general is not a party to or counsel involved in the litigation, serve notice of the constitutional challenge and a copy of the...pleading" on the attorney general. TEX. GOV'T CODE § 402.010(a). The statute further states that "[a] court may not enter a final judgment holding a statute of this state unconstitutional before the 45th day after the date" of the notice. *Id.* at (b). In a recent case out of San Antonio, wherein State District Judge Barbara Nellermoe held that Texas's Ban is unconstitutional, the appellate court granted mandamus relief to the Attorney General because of the court's failure to provide notice of the constitutional challenge. *In re State of Texas*, No.04-14-00282, 2014 WL 2443910 (Tex. App.—San Antonio May 28, 2014, no pet.) (mem. op., not designated for publication). Therefore, Sonemaly requests that the Court

14

postpone any decision on the constitutionality of Texas's Same Sex Marriage Ban until the notice required by the Government Code is provided and the 45 day notice period has passed.

## V.
## Request for Relief

Based on the forgoing, Sonemaly Phrasavath requests an order from the Court finding that Texas Family Code §§ 6.204(b) and 2.401 and Article I, § 32 of the Texas Constitution are unconstitutional under the United States Constitution; denying Movants' Special Exceptions and Motion to Dismiss; in the alternative, continuing the hearing on Movants' Special Exceptions and Motion to Dismiss until the notice period required by Texas Government Code § 402.010 has passed; and providing Sonemaly with all such further relief to which she shows herself entitled.

Respectfully submitted,

**HOPPER MIKESKA, PLLC**

By:

CRAIG HOPPER
State Bar No. 00794947
BRIAN T. THOMPSON
State Bar No. 24051425
chopper@hoppermikeska.com
bthompson@hoppermikeska.com

400 W. 15th Street, Suite 408
Austin, Texas 78701
(512) 615-6195 Telephone
(512) 615-6194 Fax

ATTORNEYS FOR COUNTER-APPLICANT

15

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing pleading has been served on the following counsel of record on this 6th day of November, 2014, in accordance with Rule 21a of the Texas Rules of Civil Procedure, either electronically through an electronic filing manager, or non-electronically via hand-delivery, e-mail, facsimile, or mail (first class or certified):

Michael B. Knisely
Jason S. Scott
Osborne, Helman, Knebel, DeLeery, L.L.P.
301 Congress Avenue, Suite 1910
Austin, Texas 78701
(512) 542-2011 (fax)

Lorin Hayes
Law Offices of Douglas A. Booth, P.C.
3801 S. Capital of Texas Highway, Suite 255
Austin, Texas 78704
(512) 478-4926 (fax)

Brian T. Thompson

16

"We continue to defend the sovereignty of the states and their constitutional authority to define marriage in this country. As the Sixth Circuit Court of Appeals has held, the states' authority to define marriage and choose whether to officially recognize marriages performed in other states is constitutional. I urge the Supreme Court to uphold the appeals court's ruling and strike down these blatant attempts to disregard the will of millions of citizens in Texas and dozens of other states who stood and voted for the cherished institution of marriage."

Attorney General Paxton continues to actively uphold Texas law in the face of unconstitutional actions taken by Travis County judges. Additionally, in January, the Attorney General's Office defended the institution of marriage before the U.S. Court of Appeals for the Fifth Circuit.

*Receive email updates from the OAG Press Office:* | Your Em | **Submit**

## Related News

### Attorney General Ken Paxton: Following High Court's Flawed Ruling, Next Fight is Religious Liberty (/news/releases/attorney-general-ken-paxton-following-high-courts-flawed-ruling-next-fight-religious-liberty)

&ldquo;Today&rsquo;s ruling by five Justices of the U.S. Supreme Court marks a radical departure from countless generations of societal law and tradition. The impact of this opinion on our society and the familial fabric of our nation will be profound. Far from a victory for anyone, this is instead a dilution of marriage as a societal institution."
**June 26, 2015**

### Attorney General Paxton Applauds Pastor Protection Bill; Calls for Protection for All People of Faith in Texas (/news/releases/attorney-general-paxton-applauds-pastor-protection-bill-calls-protection-all-people-faith-texas)

Attorney General Ken Paxton today participated in the bill signing for Senate Bill 2065, commonly referred to as the Pastor Protection Bill. The law shields pastors and churches from lawsuits regarding their refusal to



Español (/es/node/5606)   About (/about-office)



Menu

News (/news)   Opinions (/attorney-general-opinions)

Jobs (/careers/job-listings)   Contact Us (/contact-us)

HOME (/)   >   NEWS (/NEWS)   >   NEWS RELEASES (/NEWS/RELEASES)   >
ATTORNEY GENERAL KEN PAXTON: FOLLOWING HIGH COURT'S FLAWED RULING, NEXT FIGHT IS RELIGIOUS
LIBERTY

**June 26, 2015** | **Marriage (/news/categories/marriage)**

# Attorney General Ken Paxton: Following High Court's Flawed Ruling, Next Fight is Religious Liberty

SHARE THIS:                    

Texas Attorney General Ken Paxton today issued the following statement following the U.S. Supreme Court's flawed ruling on states' constitutional right to define marriage, stating the next fight is religious liberty:

"Today's ruling by five Justices of the U.S. Supreme Court marks a radical departure from countless generations of societal law and tradition. The impact of this opinion on our society and the familial fabric of our nation will be profound. Far from a victory for anyone, this is instead a dilution of marriage as a societal institution.

"What is most disturbing is the extent to which this opinion is yet another assault on the actual text of the U.S. Constitution and the rule of law itself. Just as Roe v. Wade ripped from the hands of the American people the issue of life and placed it in the judge-made 'penumbras' of

the Constitution, so has this opinion made clear that our governing document – the protector of our liberties through representative government – can be molded to mean anything by unelected judges.

"But no court, no law, no rule, and no words will change the simple truth that marriage is the union of one man and one woman. Nothing will change the importance of a mother and a father to the raising of a child. And nothing will change our collective resolve that all Americans should be able to exercise their faith in their daily lives without infringement and harassment.

"We start by recognizing the primacy and importance of our first freedom – religious liberty. The truth is that the debate over the issue of marriage has increasingly devolved into personal and economic aggression against people of faith who have sought to live their lives consistent with their sincerely-held religious beliefs about marriage. In numerous incidents trumpeted and celebrated by a sympathetic media, progressives advocating the anti-traditional marriage agenda have used this issue to publicly mock, deride, and intimidate devout individuals for daring to believe differently than they do. This ruling will likely only embolden those who seek to punish people who take personal, moral stands based upon their conscience and the teachings of their religion.

"It is not acceptable that people of faith be exposed to such abuse. The First Amendment to the U.S. Constitution protects our religious liberty and shields people of faith from such persecution, but those aspects of its protections have been denigrated by radicals, echoed by the media and an increasingly-activist judiciary. Consistent with existing federal and state Religious Freedom Restoration Acts that should already protect religious liberty and prevent discrimination based on religion, we must work to ensure that the guarantees of the First Amendment, protecting freedom of religion, and its corollary freedom of conscience, are secure for all Americans.

"Our guiding principle should be to protect people who want to live, work and raise their families in accordance with their religious faith. We should ensure that people and businesses are not discriminated against by state and local governments based on a person's religious beliefs, including discrimination against people of faith in the distribution of grants, licenses, certification or accreditation; we should prevent harassing lawsuits against people of faith, their businesses and religious organizations; we should protect non-profits and churches from state and local taxes if the federal government penalizes them by removing

then 501(c)(3) status; and we should protect religious adoption and foster care organizations and the children and families they serve. Shortly, my office will be addressing questions about the religious liberties of clerks of court and justices of the peace.

"Displays of hate and intolerance against people of faith should be denounced by all people of good will and spark concern among anyone who believes in religious liberty and freedom for all.

"Despite this decision, I still have faith in America and the American people. We must be vigilant about our freedom and must use the democratic process to make sure America lives up to its promise as a land of freedom, religious tolerance and hope."

*Receive email updates from the OAG Press Office:*   [Your Em]   **Submit**

## Related News

### Attorney General Paxton Applauds Pastor Protection Bill; Calls for Protection for All People of Faith in Texas (/news/releases/attorney-general-paxton-applauds-pastor-protection-bill-calls-protection-all-people-faith-texas)

Attorney General Ken Paxton today participated in the bill signing for Senate Bill 2065, commonly referred to as the Pastor Protection Bill. The law shields pastors and churches from lawsuits regarding their refusal to perform or host a marriage ceremony that violates their sincerely held religious beliefs. The bill passed thanks to the heroic efforts of Senator Craig Estes and Representative Scott Sanford, himself a pastor. Attorney General Paxton issued the following statement:
**June 11, 2015**

### Attorney General Paxton Statement on Passage of Pastor Protection Bill (/news/releases/attorney-general-paxton-statement-passage-pastor-protection-bill)

"Across our nation, religious values have come under assault, and today&rsquo;s bipartisan action in the Texas House is a clear step forward in the ongoing effort to preserve our first freedom: religious



(/)

Español (/es/news/releases/procurador-paxton-dirige-coalicion-de-20-estados-en-defensa-de-libertad-religiosa)

About (/about-office)   News (/news)

Opinions (/attorney-general-opinions)

Jobs (/careers/job-listings)   Contact Us (/contact-us)



**Menu**

HOME (/)   >   NEWS (/NEWS)   >   NEWS RELEASES (/NEWS/RELEASES)   >
AG PAXTON LEADS 20-STATE COALITION DEFENDING RELIGIOUS LIBERTY

September 07, 2017

# AG Paxton Leads 20-State Coalition Defending Religious Liberty

SHARE THIS:                                2

Attorney General Ken Paxton today led a 20-state coalition in filing an amicus brief with the U.S. Supreme Court in support of a Colorado cake artist's constitutionally-protected right to religious liberty. The case is widely regarded as one of the most significant on the high court's docket in the upcoming term.

Jack Phillips, the owner of Masterpiece Cakeshop, is appealing a state court decision he lost after he declined to create a cake for a same-sex marriage because of his deeply-held religious belief that marriage is the union of one man and one woman. In the past, the Supreme Court held that businesses run on religious principles may be exempted from generally applicable laws.

"The Supreme Court has the opportunity to affirm that the First Amendment contains robust protections for people who choose to operate their businesses consistent with their faith," Attorney General Paxton said. "The owner of Masterpiece Cakeshop should be allowed to choose what he will or won't create without fear of being unjustly punished by the government."

Phillips routinely turns down business that promotes other messages that are also incompatible with his faith, such as racism and atheism. Nevertheless, his refusal to design a cake for a same-sex wedding was rejected by the Colorado Court of Appeals and that state's Civil Rights Commission.

Texas is joined in the Supreme Court amicus brief by the attorneys general of Alabama, Arizona, Arkansas, Idaho, Kentucky, Louisiana, Missouri, Montana, Nebraska, Nevada, North Dakota, Oklahoma, South Carolina, South Dakota, Tennessee, Utah, West Virginia and Wisconsin, and Governor LePage of Maine.

View the amicus brief (/sites/default/files/files/press/16-111_tsac_States.pdf)

*Receive email updates from the OAG Press Office:*

Your Em

**Submit**

## Related News

**AG Paxton Joins Amicus Defending Second Amendment and Right to Self Defense (/news/releases/ag-paxton-joins-amicus-defending-second-amendment-and-right-self-defense)**

June 04, 2020 | Amicus Brief

**AG Paxton Commends Fifth Circuit for Blocking District Court Decision Mandating Unlawful, Universal Mail-In Balloting (/news/releases/ag-paxton-commends-fifth-circuit-blocking-district-court-decision-mandating-unlawful-universal-mail)**

June 04, 2020 | Press Release



# KEN PAXTON
ATTORNEY GENERAL OF TEXAS

May 3, 2016

Brian C. Cornell
Chairman and Chief Executive Officer
Target Corp.
1000 Nicollet Mall
Minneapolis, MN 55403
brian.cornell@target.com

Dear Chairman Cornell:

On April 19, Target announced that it would "welcome transgender team members and guests to use the restroom or fitting room facility that corresponds with their gender identity."[1]

Target, of course, is currently free to choose such a policy for its Texas stores. The voters in Houston recently repealed by a wide margin an ordinance that advanced many of the same goals as Target's current policy.

The Texas Legislature may at some point in the future address the issue. Regardless of whether Texas legislates on this topic, it is possible that allowing men in women's restrooms could lead to criminal and otherwise unwanted activity. As chief lawyer and law enforcement officer for the State of Texas, I ask that you provide the full text of Target's safety policies regarding the protection of women and children from those who would use the cover of Target's restroom policy for nefarious purposes.

Very truly yours,

KEN PAXTON

---

[1] Target, Continuing to Stand for Inclusivity, Apr. 19, 2016 *at* https://corporate.target.com/article/2016/04/target-stands-inclusivity.

 KEN PAXTON
ATTORNEY GENERAL of TEXAS
(/)


Menu

Español (/es/node/6536)    About (/about-office)

News (/news)    Opinions (/attorney-general-opinions)

Jobs (/careers/job-listings)    Contact Us (/contact-us)



HOME (/)    >    NEWS (/NEWS)    >    NEWS RELEASES (/NEWS/RELEASES)    >
AG PAXTON OFFERS ASSISTANCE TO TARGET AFTER ANOTHER SECURITY BREACH

**September 09, 2016**

# AG Paxton Offers Assistance to Target After Another Security Breach

**SHARE THIS:**                                      **0**

In the wake of multiple Dallas/Ft. Worth media outlets reporting another breach in customer security at Target stores in North Texas, Attorney General Ken Paxton issued the following statement:

"After this latest incident, I hope Target finally recognizes the importance of protecting its customers, especially in environments where they can be at their most vulnerable. I am offering them the resources of my office to help assist them in improving their safety procedures."

On May 3, 2016, a man was peering over the changing room wall with a cellphone camera at a Target store in Frisco, Texas. Since last Thursday, police in Dallas are looking for a man who committed a similar act in a Target changing room on Northwest Highway at Abrams.

*Receive email updates from the OAG Press Office:*    Your Em    **Submit**

Langan 90




HOME (/)   >   NEWS (/NEWS)   >   NEWS RELEASES (/NEWS/RELEASES)   >
ATTORNEY GENERAL PAXTON FILES AMICUS IN VIRGINIA SCHOOL BATHROOM LAWSUIT

May 11, 2016

# Attorney General Paxton Files Amicus in Virginia School Bathroom Lawsuit

**SHARE THIS:**                     **0**

Attorney General Ken Paxton on Tuesday joined seven other state executives in pushing back against the U.S. Department of Education's agenda to redefine what it means to be female and male.  In an amicus brief filed in the U.S. Court of Appeals for the Fourth Circuit, General Paxton challenges a court ruling against the Gloucester School District in Virginia, which prohibited a female student from using the school restrooms and other intimate facilities designated for males.

The trial court in that case deferred to the Department of Education's new interpretation of Title IX's definition of "sex," which holds that Congress intended students to be able to choose their gender when it came to Title IX of the Education Amendments of 1972. This means students may choose which intimate facilities in schools (bathrooms, locker rooms, etc.) they wish to access.

"One's sex is a biological fact, not a state of mind," stated General Paxton. "If this radical new interpretation by the Department of Education is permitted to go unchallenged, schools may no longer be able to maintain

separate restrooms, showers, and locker rooms on the basis of students' actual sex. Title IX permits all schools to maintain separate facilities, including bathrooms and locker rooms, and I will defend that principle."

Also on Tuesday, General Paxton sent a letter to the chairman of the Fort Worth Independent School District school board informing him of several ways in which the district's policy regarding transgender students and bathrooms violates state law.

To view the amicus brief, please visit:

https://www.texasattorneygeneral.gov/files/epress/files/2016/gloucester_amicus_brief.pdf (https://www.texasattorneygeneral.gov/files/epress/files/2016/gloucester_amicus_brief.pdf)

To view the letter Attorney General Paxton sent to the FWISD school board, please visit:

https://www.texasattorneygeneral.gov/files/epress/files/2016/2016-05-10_fort_worth_letter.pdf (https://www.texasattorneygeneral.gov/files/epress/files/2016/2016-05-10_fort_worth_letter.pdf)

*Receive email updates from the OAG Press Office:*

Your Ema | **Submit**

## Related News

### AG Paxton Files Multistate Amicus Defending Religious Liberty for Foster Care Providers (/news/releases/ag-paxton-files-multistate-amicus-defending-religious-liberty-foster-care-providers)

**June 03, 2020 | Noteworthy**

### AG Paxton Warns U.S. Senate Leadership of Dangers to Election Integrity in Expanding Mail-In Balloting with the HEROES Act (/news/releases/ag-paxton-warns-us-senate-leadership-dangers-election-integrity-expanding-mail-balloting-heroes-act)

**June 01, 2020 | Press Release**





(/)

Español (/es/node/6211)    About (/about-office)

News (/news)    Opinions (/attorney-general-opinions)

Jobs (/careers/job-listings)    Contact Us (/contact-us)



**HOME (/)** > **NEWS (/NEWS)** > **NEWS RELEASES (/NEWS/RELEASES)** >
**AG PAXTON: TEXAS LEADS FIGHT AGAINST DOE, DOJ BATHROOM & LOCKER ROOM RULES**

May 25, 2016

# AG Paxton: Texas Leads Fight Against DOE, DOJ Bathroom & Locker Room Rules

**SHARE THIS:**                              **8**

The Texas Attorney General today filed a lawsuit in U.S. District Court against the U.S. Department of Education, U.S. Department of Justice, and other federal agencies and officials, which are now issuing directives requiring Texas public schools open up all intimate areas (restrooms, locker rooms, etc.) to both sexes. The State of Texas's lawsuit also defends a local school district whose policies are at odds with the Obama Administration directive.

"Our local schools are now in the crosshairs of the Obama Administration, which maintains it will punish those schools who do not comply with its orders. These schools are facing the potential loss of school funding for simply following common sense policies that protect their students," Texas Attorney General Paxton said. "This represents just the latest example of the current administration's attempts to

Langan 93

accomplish by executive fiat what they couldn't accomplish through the democratic process in Congress. By forcing through his policies by executive action, President Obama excluded the voice of the people. We stand today to ensure those voices are heard."

The Obama Administration is attempting to rewrite Congress's use of the term "sex" in federal law to now expand to include "gender identity." If successful, this radical change opens up all intimate areas within schools simultaneously to members of both sexes. Texas is joined by 10 other states in pushing back against enforcement of these unconstitutional rules.

Joining Texas in the filing are Alabama, Arizona, Georgia, Louisiana, Maine, Oklahoma, Tennessee, Utah, West Virginia and Wisconsin.

To view the lawsuit, please visit: https://www.texasattorneygeneral.gov/files/epress/files/2016/complaint_FM.pdf (https://www.texasattorneygeneral.gov/files/epress/files/2016/complaint_FM.pdf)

*Receive email updates from the OAG Press Office:*

| Your Em |

**Submit**

## Related News

### AG Paxton Joins Amicus Defending Second Amendment and Right to Self Defense (/news/releases/ag-paxton-joins-amicus-defending-second-amendment-and-right-self-defense)

**June 04, 2020 | Amicus Brief**

### AG Paxton Commends Fifth Circuit for Blocking District Court Decision Mandating Unlawful, Universal Mail-In Balloting (/news/releases/ag-paxton-commends-fifth-circuit-blocking-district-court-decision-mandating-unlawful-universal-mail)

**June 04, 2020 | Press Release**

**AG Paxton Files Multistate Amicus Defending Religious Liberty for Foster Care Providers (/news/releases/ag-paxton-files-multistate-amicus-defending-religious-liberty-foster-care-providers)**

**June 03, 2020 | Noteworthy**

**AG Paxton Warns U.S. Senate Leadership of Dangers to Election Integrity in Expanding Mail-In Balloting with the HEROES Act (/news/releases/ag-paxton-warns-us-senate-leadership-dangers-election-integrity-expanding-mail-balloting-heroes-act)**

**June 01, 2020 | Press Release**

See all News (/news)

Back to Top

Child Support (/child-support)

Crime Victims (/crime-victims)

Consumer Protection (/consumer-protection)

Open Government (/open-government)

All Divisions (/divisions)

Opinions (/attorney-general-opinions)

Initiatives (/initiatives)

Human Resources (/careers)

Where the Money Goes (https://comptroller.texas.gov/transparency)

ADA Compliance (/ada-compliance)

Compact With Texans (/about-office/compact-texans)

Cost Efficiency Saving Ideas (/about-office/cost-efficiency-saving-ideas)

Reporting Fraud (/about-office/reporting-fraud-state-government)

State Agency Contracts (https://oagtx.force.com)

TRAILS Search (https://www.tsl.state)

Texas Homeland Security (https://gov.texas.gov)

Texas Veterans Portal (https://veterans.portal)

Texas.gov (http://www.texas.gov)

Accessibility & Site Policies (/site-policies)

 (https://twitter.com/TXAG)

 (https://www.facebook.com/TexasAttorneyGeneral)

**PO Box 12548**
**Austin, TX 78711-2548**

(/)

 (/)

Español (/es/node/6841)   About (/about-office)

News (/news)   Opinions (/attorney-general-opinions)

Jobs (/careers/job-listings)   Contact Us (/contact-us)

 Menu



HOME (/)   >   NEWS (/NEWS)   >   NEWS RELEASES (/NEWS/RELEASES)   >
AG PAXTON RESPONDS TO THE ANNOUNCEMENT OF SENATE BILL 6

**January 05, 2017**

# AG Paxton Responds to the Announcement of Senate Bill 6

**SHARE THIS:**                                    0

Attorney General Ken Paxton today issued the following statement of support for Senate Bill 6, the Privacy Protection Act:

"After our success in stopping President Obama's bathroom rules in court, states are now free to enact legislation of their choosing to protect privacy. Texans should feel safe and secure when they enter any intimate facility, so I applaud the work of Lieutenant Governor Patrick and Senator Kolkhorst for fighting to protect women and children from those who might use access to such facilities for nefarious purposes."

*Receive email updates from the OAG Press Office:*   [ Your Em ]   **Submit**




(/)

Español (/es/node/6856)    About (/about-office)

News (/news)    Opinions (/attorney-general-opinions)

Jobs (/careers/job-listings)    Contact Us (/contact-us)

**January 10, 2017**

# Joining a Coalition of 23 States, Texas AG Paxton Files Amicus Brief to Protect Student Privacy

**SHARE THIS:**                    0

Joining a coalition of 23 states led by West Virginia, Texas Attorney General Ken Paxton today filed an amicus brief in the United States Supreme Court supporting the Gloucester County School Board in a lawsuit over Title IX bathroom regulations. A transgender student sued the school board after they were given the options of using the restroom corresponding to their biological sex, a private facility, or a unisex restroom.

The school board argues that the definition of one's sex in Title IX, which prohibits discrimination on the basis of sex, by its express terms does not include gender identity, but instead pertains to biological sex.

In 2015, Gloucester High School constructed three, single stall, unisex restrooms to better accommodate students who seek privacy, but feel they cannot use the facility that corresponds with their assigned sex at

birth. The transgender student suing previously agreed to use a separate restroom in the nurse's office, but then expressed a preference for the boys' bathroom at the high school.

"All students should feel safe and secure at school, especially in the most private of places," said Attorney General Paxton. "Schools must be allowed to act in the best interest of the entire student body and protect them from persons who may abuse access to intimate facilities and threaten our children."

The Supreme Court has implemented a stay of the ruling against the school board from the 4th U.S. Circuit Court of Appeals.

This case predated the federal government's May 2016 guidance letter. The letter determined that Title IX's prohibition on sex discrimination includes gender identity and that students can use the intimate facility of their choice, regardless of their biological sex. Attorney General Paxton is leading a 13-state coalition that obtained a nationwide preliminary injunction against the guidance letter.

View a copy of the amicus brief here (https://www.texasattorneygeneral.gov/files/epress/16-273tsac_State_of_West_Virginia_Amicus_Brief-c1.pdf).

*Receive email updates from the OAG Press Office:*

Your Em    **Submit**

## Related News

### AG Paxton Files Multistate Amicus Defending Religious Liberty for Foster Care Providers (/news/releases/ag-paxton-files-multistate-amicus-defending-religious-liberty-foster-care-providers)

**June 03, 2020 | Noteworthy**

### AG Paxton Warns U.S. Senate Leadership of Dangers to Election Integrity in Expanding Mail-In Balloting with the HEROES Act (/news/releases/ag-paxton-warns-us-senate-leadership-

Case 1:20-cv-00275-RP Document 10-1 Filed 06/09/20 Page 99 of 103



≡ MENU

# Ken Paxton pitches Texas business community on "bathroom bill"

Attorney General Ken Paxton on Tuesday pitched the "bathroom bill" to the Texas business community, which has vocally opposed the effort to regulate bathroom use.

BY **PATRICK SVITEK**    JAN. 17, 2017    4 PM



Texas Attorney General Ken Paxton during a press conference to recognize January as Human Trafficking Awareness Month on January 12, 2017. 📷 Marjorie Kamys Cotera

*Editor's note: This story has been updated throughout.

Making his case for the "bathroom bill" to Texas business leaders, Attorney General Ken Paxton said Tuesday that Senate Bill 6 would have a narrow focus, and he urged them to listen to parents "just concerned about the safety of their children."

Paxton spoke about SB 6 during a conference held by the Texas Association of Business. The bill, a priority of Lt. Gov. Dan Patrick, would require transgender people to use bathrooms in public schools, government buildings and public universities based on "biological sex."

Paxton pitches general counsel of Texas business community on bathroom bill | The Texas Tribune

The Texas Association of Business has been fighting the bathroom bill push for weeks, releasing a study last month that said such legislation could cost the state up to $8.5 billion and over 100,000 jobs. Patrick and his allies have criticized the study, saying it is based on bad data and may be politically motivated.

The Texas Tribune thanks its sponsors. **Become one**.

Paxton, who has been battling the federal government in court over transgender student guidelines it issued last year, struck a conciliatory tone Tuesday as he spoke at the association's meeting. He acknowledged that the group has been involved in the debate before stressing that the bill "doesn't apply to businesses, from what I can tell."

SB 6 would pre-empt local ordinances — as applied to bathrooms — that protect transgender individuals from discrimination in public accommodations. Those ordinances effectively require businesses, such as restaurants and retail stores, to allow transgender people to use the bathroom that matches their gender identity.

Police Brutality in Texas     Latest Unemployment Numbers     Coronavirus Reopening     Texas Case Map

government facilities," apparently referring to a part of the bill that would, for example, exempt a sports league that rents a publicly owned venue. It is a key component of the legislation in light of concerns the measure could cause the state to lose out on major athletic events such as the Final Four, which is set to be held in 2018 in San Antonio.

Paxton made an emotional appeal to the crowd as well, pointing to conversations he has had with parents in the Fort Worth Independent School District. The district became an early battleground in Texas' bathroom wars last year when it issued guidelines for transgender students, leading Patrick to call for the resignation of the superintendent Kent Scribner.

"Really what I learned from them was they were just concerned about the safety of their children," Paxton said. "And so as you guys deal with that issue, I'm not in the legislative process anymore, but I encourage you to at least take into account what these parents are saying because they come from all parties … They're independents, they come from different cultural backgrounds and yet they're concerned about the same issue."

The conference heard later in the day from Joseph Kopser, an Austin businessman who asked the crowd to help Patrick and his allies "find a way out

of " the controversy spawned by Senate Bill 6.

The Texas Tribune thanks its sponsors. **Become one**.

"Let's get out of the headlines as a state talking about who's going to enforce the checking of gender in bathrooms," Kopser said, "and let's talk about this Texas economic miracle and keep it going."

**Read more of our related coverage:**

- The so-called bathroom bill has drawn national attention to the Texas Legislature. But what would the proposed bill actually do? We've annotated the text to explain in plain English how the bill would impact communities across Texas.

- State Rep. Matt Schaefer proposed a rule requiring people in the Capitol to use bathrooms corresponding to their biological sex during a House floor debate in the first week of the 2017 legislative session.

*Disclosure: The Texas Association of Business and Joseph Kopser have been financial supporters of The Texas Tribune. A complete list of Tribune donors and sponsors can be viewed here.*

## Quality journalism doesn't come free

Perhaps it goes without saying — but producing quality journalism isn't cheap. At a time when newsroom resources and revenue across the country are declining, The Texas Tribune remains committed to sustaining our mission: creating a more engaged and informed Texas with every story we cover, every event we convene and every newsletter we send. As a nonprofit newsroom, we rely on members to help keep our stories free and our events open to the public. Do you value our journalism? Show us with your support.

**YES, I'LL DONATE TODAY**



**TOPICS**

Congress

Courts

Criminal justice

Demographics

Economy

Energy

Environment

Health care

Higher education

Immigration

Politics

Public education

State government

View all

**INFO**

About Us

Our Staff

Jobs

Who Funds Us?

Strategic Plan

Republishing Guidelines

Code of Ethics

Terms of Service

Privacy Policy

Send us a confidential tip

Corrections

Feeds

Newsletters

Audio

Video

**SOCIAL MEDIA**

Facebook

Twitter

YouTube

Instagram

LinkedIn

Reddit

Join our Facebook Group, This Is Your Texas.

Donate

Contact Us

Advertise

© 2020 The Texas Tribune



**KEN PAXTON**
ATTORNEY GENERAL of TEXAS


Menu

Español (/es/news/releases/procurador-paxton-elogia-fallo-del-5o-circuito-que-libera-contribuyentes-de-texas-de-dar-fondos-para)

About (/about-office)   News (/news)   Opinions (/attorney-general-opinions)

Jobs (/careers/job-listings)   Contact Us (/contact-us)   🔍

HOME (/)   >   NEWS (/NEWS)   >   NEWS RELEASES (/NEWS/RELEASES)   >
AG PAXTON COMMENDS 5TH CIRCUIT RULING THAT SPARES TEXAS TAXPAYERS FROM FUNDING SEX-CHANGE SURGERY FOR PRISONERS

April 01, 2019 | Press Release

# AG Paxton Commends 5th Circuit Ruling that Spares Texas Taxpayers from Funding Sex-Change Surgery for Prisoners

SHARE THIS:                8

Attorney General Ken Paxton today commended last Friday's decision by the U.S. Court of Appeals for the 5th Circuit that Texas prison officials do not violate transgender inmates' constitutional rights against cruel and unusual punishment by refusing to provide them with gender reassignment surgery.

> "The 5th Circuit's decision is a win for Texas taxpayers and the rule of law," Attorney General Paxton said. "Americans strongly believe in the legal and moral obligation to assure our criminal justice system imposes appropriate and humane penalties, but the 5th Circuit's faithful analysis of the Constitution makes clear that obligation does not give convicted criminals a constitutional right to a taxpayer-funded gender reassignment surgery."

In a 2-1 decision, the 5th Circuit ruled against inmate Scott Lynn Gibson, who's serving a 20-year prison sentence for the murder of another inmate, 13 years for a deadly assault attempt on a correctional guard, and 18 years for aggravated robbery. Gibson challenged the Texas Department of Criminal Justice's policy that provides hormone and mental health treatment but does not allow sex-change surgery as treatment for Gibson's diagnosed gender identity disorder.

Writing for the majority, 5th Circuit Judge James Ho concluded that "[u]nder established precedent, it can be cruel and unusual punishment to deny essential medical care to an inmate. But that does not mean prisons must provide whatever care an inmate wants."

View a copy of the decision here (https://www.texasattorneygeneral.gov/sites/default/files/images/admin/2019/Press/PUBLISHED%20OPINION%20FILED%20%2003

*Receive email updates from the OAG Press Office:* | Your Email Address |    **Submit**

**Related News**

**AG Paxton Files Multistate Amicus Defending Religious Liberty for Foster Care Providers (/news/releases/ag-paxton-files-multistate-amicus-defending-religious-liberty-foster-care-providers)**

June 03, 2020 | Noteworthy