**NO. 18-50646**

**IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

_____

CITY OF AUSTIN,
Plaintiff – Appellee,

v.

KEN PAXTON, ATTORNEY GENERAL OF THE STATE OF TEXAS;
TEXAS WORKFORCE COMMISSION,
Defendants – Appellants.

_____

Appeal from Cause No. 1:17-CV-00843-SS
In the United States District Court, Western District of Texas
Honorable Sam Sparks, Presiding

_____

**BRIEF OF APPELLEE CITY OF AUSTIN**

_____

ANNE L. MORGAN, City Attorney
MEGHAN L. RILEY, Chief, Litigation
PATRICIA L. LINK, Assistant City Attorney
State Bar No. 24041343
HANNAH M. VAHL
State Bar No. 24082377
City of Austin Law Department
P. O. Box 1546
Austin, Texas 78767-1546
Telephone:  (512) 974-2173
Facsimile:  (512) 974-1311
patricia.link@austintexas.gov

**ATTORNEYS FOR
PLAINTIFF-APPELLEE**

# CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

| **Plaintiff-Appellee:** | **Counsel for Plaintiff-Appellee:** |
| --- | --- |
| City of Austin | Anne L. Morgan |
| | Meghan L. Riley |
| | Patricia L. Link (lead counsel) |
| | Hannah M. Vahl |
| | City of Austin Law Department |
| **Defendants-Appellants:** | **Counsel for Defendants-Appellants:** |
| Ken Paxton, Attorney General of the State of Texas | Ken Paxton |
| Texas Workforce Commission | Jeffrey C. Mateer |
| | Kyle D. Hawkins |
| | Lisa A. Bennett (lead counsel) |
| | Adam N. Bitter |
| | Office of the Attorney General |

s/ Patricia L. Link
PATRICIA L. LINK

## RECORD CITATIONS AND ABBREVIATIONS

This brief uses the following abbreviations and record citations:

ROA ___          Record on appeal.

APX ___          Appendix.

AT Br ___        Brief of Appellant

## STATEMENT REGARDING ORAL ARGUMENT

The City agrees that oral argument is appropriate in this case.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS.....................................................ii

STATEMENT REGARDING ORAL ARGUMENT........................................iii

TABLE OF CONTENTS .............................................................................iv

INDEX OF AUTHORITIES.........................................................................vi

STATEMENT OF JURISDICTION................................................................1

STATEMENT OF ISSUES ...........................................................................1

STATEMENT OF THE CASE.......................................................................1

I.      Background.....................................................................................1

    A. City of Austin Fair Housing Law............................................1

    B. Legislative Response...............................................................3

    C. Attorney General's Litigation History Against the City.................4

II.     Procedural History...........................................................................5

SUMMARY OF ARGUMENT......................................................................6

STANDARD OF REVIEW ...........................................................................6

ARGUMENT ...........................................................................................6

    A. The Attorney General has "some connection" to the enforcement of Section
       250.007. ...............................................................................7

       1. The Attorney General demonstrates "some connection" through his conduct. ..............8

       2. Texas law establishes "some connection" between the Attorney General and Section
          250.007. .......................................................................11

    B. The City established the Attorney General's demonstrated willingness to
       enforce. ...............................................................................12

CONCLUSION AND PRAYER FOR RELIEF................................................14

**CERTIFICATE OF SERVICE** ...........................................................................**15**

**CERTIFICATE OF COMPLIANCE** ..............................................................**16**

# INDEX OF AUTHORITIES

## Cases

*Air Evac EMS, Inc. v. Tex. Dep't of Ins., Div. of Workers' Comp.*,
  851 F.3d 507 (5th Cir. 2017) ..............................................................6,7

*Ex Parte Young*,
  209 U.S. 123 (1908)...................................................................... passim

*Hamilton v. Foti*,
  372 F. App'x 480 (5th Cir. 2010) ...................................................9, 10

*K.P. v. LeBlanc*,
  627 F.3d 115 (5th Cir. 2010) ...............................................................7

*Morris v. Livingston*,
  739 F.3d 740 (5th Cir. 2014) ...............................................................9

*Okpalobi v. Foster*,
  244 F.3d 405 (5th Cir. 2001) ...................................................... 9, 10, 11

*Paxton v. City of Austin*, et al.,
  Travis County District Court, Case No. D-1-GN-16-003340 ..............................5

*Pulliam, et al., v. City of Austin, et al.*,
  Travis County District Court, Case No. D-1-GN-16-004307 ..............................5

*Steffel v. Thompson*,
  415 U.S. 452 (1974).........................................................................13

*Susan B. Anthony List v. Driehaus*,
  573 U.S. 149 (2014).........................................................................13

*Tex. Assoc. of Bus. et al., v. City of Austin, et al.*,
2018 WL 6005551 (Tex.App.—Austin, 2018)........................................ 8, 11, 14

*Texas v. Travis County, Texas*,
2017 WL 6550737 (C.A.5) ................................................................................8

*Texas v. Travis County, Texas*,
910 F.3d 809 (5th Cir. 2018) ...........................................................................5,8

*Yu v. Perry*,
82 F.App'x. 993 (5th Cir. 2003) ........................................................................9

*Zaatari, et al., v. City of Austin, et al.*,
Travis County District Court, Case No. D-1-GN-16-002620 ............... 5, 8, 11,14

**Statutes**

28 U.S.C. § 1291 ..............................................................................................1
42 U.S.C. § 1437f (a) .......................................................................................3
42 U.S.C. § 3615 ..............................................................................................1
Civil Practice and Remedies Code §37.006........................................................14
Tex. Loc. Gov't Code § 501.063 .......................................................................9
Tex. Civ. Prac. & Rem. Code § 37.006(b)........................................................11
Tex. Loc. Gov't Code § 250.007 ................................................................ passim
Tex. Prop. Code §301.090 ...............................................................................12

**Other**

Texas S.B. 267, 84th Leg., R.S. (2015) ...............................................................3, 4

## STATEMENT OF JURISDICTION

The Court has appellate jurisdiction under 28 U.S.C. § 1291, pursuant to the collateral order doctrine.

## STATEMENT OF ISSUES

Section 250.007 of the Texas Local Government Code prohibits a municipality, such as the City of Austin, from adopting or enforcing ordinances that outlaw housing discrimination based on the fact that the household receives federal housing assistance. Because Section 250.007 authorizes a discriminatory practice, it is preempted by 42 U.S.C. § 3615. The issue presented by this appeal: the district court correctly ruled that *Ex parte Young* waives the Texas Attorney General's immunity.

## STATEMENT OF THE CASE

I.  Background

A. City of Austin Fair Housing Law

The City of Austin has a long-standing set of City Code provisions that prohibit housing discrimination. Austin City Code Chapter 5-1 (*Housing Discrimination*) prohibits discrimination based on an individual's race, national origin, religion, color, sex, familial status, disability, student status, marital status, sexual orientation, gender identity, age, or creed. ROA 97. The Austin Fair Housing

1

Office (FHO) administers Chapter 5-1, which is substantially equivalent to the federal Fair Housing Act with regard to substantive rights, procedures, remedies, and the availability of judicial review. ROA 97. The City's FHO received its initial certification from the U.S. Department of Housing and Urban Development (HUD) in 1996 and has retained its certification since that time. ROA 97.

During April of 2014, the Austin City Council passed Resolution No. 20140417-048 ("Resolution") directing the City Manager to prepare an ordinance to amend the City Code to prohibit discrimination against an individual based on their source of income. ROA 98. The Resolution was approved in response to several factors, including recommendations from the City's Community Development Commission; an Austin Tenants' Council report concerning the acceptance of vouchers by landlord; and a report from HUD concerning the impact of prohibiting source of income discrimination. ROA 98. The Resolution also supported the City's federally mandated effort to affirmatively further fair housing. ROA 98.

Later that same year [2014], the Austin City Council passed Ordinance No. 20141211-050 ("Ordinance"), which prohibits landlords from discriminating against a person in the provision of housing based on their source of income. ROA 98. The Ordinance defines "source of income" as "lawful, regular, and verifiable income including, but not limited to, housing vouchers and other subsidies provided by government and non-governmental entities, child support, or spousal maintenance,

but does not include future gifts." ROA 98. The Ordinance does not require landlords to favor a person with a Housing Choice Voucher (HCV) over any other applicant; rather, the Ordinance simply prohibits a landlord from denying an otherwise qualified applicant because of their source of income. ROA 98. After the Austin City Council passed the Ordinance, the City notified HUD of the Ordinance. To date, HUD has not withdrawn the City's substantial equivalency certification. ROA 98.

B.  Legislative Response

One week following the passage of the Ordinance, Texas Senator Charles Perry filed Texas S.B. 267, 84th Leg., R.S. (2015). Senate Bill 267 ("SB 267"), which sought to prohibit Texas cities from adopting or enforcing ordinances that prohibit discrimination on the basis of an individual's income that comes from a federal housing assistance program[1]. ROA 99-100. On June 19, 2015, Governor Abbott signed into law SB 267. ROA 100. At the time SB 267 was signed into law, no other Texas city or county had enacted local protections for HCV holders. ROA 100.

---

[1] Federal housing assistance program is commonly understood to mean the federal Housing Choice Voucher (HCV) Program (formerly known as "Section 8 Vouchers"), which was created for the purposes of "aiding low-income families in obtaining a decent place to live" and "promoting economically mixed housing." 42 U.S.C. § 1437f (a). In 2014, the Housing Authority of the City of Austin (HACA) administered at least 5,000 vouchers, which in turn served over 14,000 individuals. Of those individuals, approximately 58 percent were African-Americans and 41 percent were white. Of those white individuals, 75 percent identified as Hispanic or Latino. ROA 95.

SB 267 was codified as Texas Local Government Code Section 250.007 ("Regulation of Rental or Leasing of Housing Accommodations"), effective September 1, 2015. Section 250.007 provides:

> (a) Except as provided by this section, a municipality or county may not adopt or enforce an ordinance or regulation that prohibits an owner, lessee, sublessee, assignee, managing agent, or other person having the right to lease, sublease, or rent a housing accommodation from refusing to lease or rent the housing accommodation to a person because the person's lawful source of income to pay rent includes funding from a federal housing assistance program.
> (b) This section does not affect an ordinance or regulation that prohibits the refusal to lease or rent a housing accommodation to a military veteran because of the veteran's lawful source of income to pay rent.
> (c) This section does not affect any authority of a municipality or county or decree to create or implement an incentive, contract commitment, density bonus, or other voluntary program designed to encourage the acceptance of a housing voucher directly or indirectly funded by the federal government, including a federal housing choice voucher.

Tex. Loc. Gov't Code § 250.007.

Section 250.007 limits the City's ability to prohibit housing discrimination based on use of a HCV.

### C.   Attorney General's Litigation History Against the City

In 2017, the Texas Attorney General (Attorney General) sued the City of Austin and various other parties in an attempt to secure a pre-enforcement declaration that the law known as Senate Bill 4 ("SB 4") is lawful. See *Texas, et al.,*

*v. Travis County, et al.*, 910 F.3d 809 (5th Cir. 2018). ROA 144. The Attorney General filed the suit before SB 4 went into effect. *Texas*, 910 F.3d at 811.

In 2016, the Attorney General filed pleas in intervention in two lawsuits filed by private parties. The first was *Zaatari, et al., v. City of Austin, et al.*, Travis County District Court, Case No. D-1-GN-16-002620 (currently on appeal at the Third Court of Appeals, Case No. 03-17-00812-cv). *Zaatari* is a suit filed by individuals who are challenging the City's short-term rental regulations. ROA 144; ROA 226, ll 12-19. The second was *Pulliam, et al., v. City of Austin, et al.*, Travis County District Court, Case No. D-1-GN-16-004307, which relates to the City's collective bargaining agreement with the Austin Firefighter's Association. ROA 144. Also in 2016, the Attorney General filed suit against the City in relation to its weapon's policy at City Hall. See *Paxton v. City of Austin*, et al., Travis County District Court, Case No. D-1-GN-16-003340. ROA 144.

## II.    Procedural History

The City agrees that this interlocutory appeal is limited to the district court's ruling on the Attorney General's and the Texas Workforce Commission's immunity. As it relates to the Attorney General, the district court's analysis and ruling on this issue was correct and should be upheld.

## SUMMARY OF ARGUMENT

The Attorney General has some connection to enforcement because he acts to enforce the supremacy of state law, he intervenes in litigation against the City that involves the constitutionality and validity of state law and municipal ordinances, and lastly, he is able to prevent housing discrimination investigations that concern a landlord's refusal to accept HCV. The Attorney General's conduct demonstrates his willingness to enforce the supremacy of state law and waives his immunity. The district court's decision is consistent with *Ex parte Young* and its progeny.

## STANDARD OF REVIEW

The City agrees that the standard of review in this appeal is *de novo*.

## ARGUMENT

A "straightforward inquiry" is used to determine whether *Ex parte Young* waives a state official's immunity. The "straightforward inquiry" does not "go beyond a threshold analysis." *Air Evac EMS, Inc. v. Tex. Dep't of Ins., Div. of Workers' Comp.*, 851 F.3d 507, 517 (5th Cir. 2017). In this case, the district court made a straightforward inquiry and found that the Attorney General's immunity is waived.

A. The Attorney General has "some connection" to the enforcement of Section 250.007.

*Ex parte Young* waives the immunity for a state official who, because of his office, has some connection to the enforcement of the challenged act. *Ex Parte Young*, 209 U.S. 123, 157 (1908). This Court has interpreted "some connection" to include "a specific means through which to apply" the law. *Air Evac EMS, Inc.*, 851 F.3d at 518. Whether *Ex parte Young* applies must be decided within the context of the complaint "including the challenged law and defendants." *Id.*, 851 F.3d at 519. Where the enforcement authority derives from is not relevant "so long as it exists." *K.P. v. LeBlanc*, 627 F.3d 115, 124 (5th Cir. 2010) (citing *Ex parte Young*, 209 U.S. at 157.). Moreover, enforcement encompasses direct enforcement and acts of "compulsion or constraint." *K.P.*, 627 F.3d at 122. The Attorney General easily possesses the requisite connection to the challenged law to make him a proper party defendant under *Ex parte Young*.

Looking at the context of this complaint and making a straightforward inquiry, the Attorney General is a state official with the ability to apply Section 250.007 to the City. In other words, if the City attempts to enforce its Ordinance, the Attorney General is authorized to enforce (or apply) Section 250.007 by filing its own lawsuit or intervening in a lawsuit filed against the City by private parties. Moreover, the

Texas Fair Housing Act (TFHA) grants the Attorney General authority interfere with housing discrimination investigations. The requisite connection exists.

1.  The Attorney General demonstrates "some connection" through his conduct.

In recent years, the Attorney General has demonstrated his connection to the enforcement of state law against municipal ordinances and policies. *See generally Texas v. Travis County, Texas*, 910 F.3d 809 (5th Cir. 2018); *Zaatari, et al., v. City of Austin, et al.*, Case No. D-1-GN-16-002620, Travis County District Court, Aug. 24, 2017, Second Amended Plea in Intervention of Texas. APX 1.); and *Tex. Assoc. of Bus. et al., v. City of Austin, et al.*, 2018 WL 6005551 (Tex.App.—Austin, 2018).[2] APX 2. In these cases, he claimed that his general enforcement authority extends to enforcing the supremacy of state law over municipal ordinances.[3] If the City attempts to enforce its Ordinance, the Attorney General will rely on his general enforcement authority to prevent the City from enforcing its Ordinance. ROA 241, ll 15-20; ROA 242, ll 10-12. For this reason, City is not similarly situated to an

---

[2] The ordinance that is subject of the *Texas Association of Business* lawsuit was adopted in February of 2018. Private parties filed a lawsuit against the City in April of 2018 and the Attorney General intervened in April of 2018.

[3] Additionally, in 2017, the Attorney General argued in its briefing that "Texas has an interest in its laws being enforced and being properly recognized by other governmental entities, including its political subdivisions." Appellants' Brief in *Texas v. Travis County, Texas*, 2017 WL 6550737 (C.A.5), 36. APX 3.

individual who sues an attorney general or governor[4] because of their general responsibilities. As a result, the Attorney General's reliance on *Morris v. Livingston*, 739 F.3d 740 (5th Cir. 2014); *Hamilton v. Foti*, 372 F. App'x 480 (5th Cir. 2010); and *Okpalobi v. Foster*, 244 F.3d 405 (5th Cir. 2001) is misplaced.[5]

In *Morris v. Livingston*, the plaintiff, a state inmate, filed suit under §1983 challenging the collection of a health care services fee from inmates under Section 501.063 of the Texas Government Code. 739 F.3d 740 (5th Cir. 2014). This particular provision made "clear that the [Texas Department of Corrections and Justice] TDCJ is the agency responsible" for administering and enforcing the fee. *Morris*, 739 F.3d at 746. However, in Morris' initial complaint, he named Governor Perry as a defendant and alleged that the Governor has a "guardian-ward relationship" with him. The district court, recognizing that a proper party existed per the statute, substituted in the executive director of the TDCJ, which this court upheld. *Morris*, 739 F.3d at 745-746. Section 250.007 is not structured like Section 501.063 of the Texas Government Code nor does identify a particular individual or agency charged with its enforcement, and as such, *Morris* is not determinative of whether the Attorney General is the proper defendant in this case.

---

[4] The Attorney General appears to equate the City's complaint to the complaint filed by Inclusive Communities Project, Inc. (ICP) that challenged Section 250.007 and was filed against Governor Abbot. However, when considered in context, the City is not similarly situated to ICP nor is Governor Abbot similarly situated to the Attorney General.

[5] The Attorney General also relies on *Yu v. Perry*, 82 F. App'x. 993 (5th Cir. 2003); however, the lack of factual information in the opinion limits its utility in this case.

In *Hamilton v. Foti*, the plaintiff, also an inmate, filed a §1983 action against the Louisiana Attorney General (Foti). 372 F. App'x 480 (5th Cir. 2010). The basis of his claim was the automatic stay provision of the Louisiana's Prisoner Litigation Reform Act (PLRA). The automatic stay was applied by a state court clerk after Hamilton failed to pay court costs in a separate state breach of contract case. *Hamilton*, 372 F. App'x at 482-483. Hamilton claimed that the automatic stay provision violated the United States and Louisiana Constitutions. *Hamilton*, 372 F.App'x at 483. He filed suit against Foti and alleged that Foti is the guardian of the PLRA and that it is Foti's duty (as attorney general) to enforce the laws of the state. *Hamilton*, 372 F. App'x at 485. This Court held that Foti's duty to enforce state law was insufficient to waive Eleventh Amendment immunity, especially because the complaint and record lacked any indication that Foti would enforce the automatic stay against Hamilton. *Hamilton*, 372 F. App'x at 485-486. The statute Hamilton challenged, which only restricted access to the court without payment of the fees, is not similar to Section 250.007, which prohibits adoption or enforcement of a certain municipal ordinance and, as a result, is not instructive in this case.

In *Okpalobi v. Foster*, individuals and entities who provide abortion services sued Louisiana's governor and attorney general (collectively referred to as "Foster"). 244 F.3d 405 (5th Cir. 2001). Plaintiffs alleged a tort statute that made abortion providers liable to patients for damages resulting from the abortion was

unconstitutional. *Okpalobi*, 244 F.3d at 409. This Court dismissed the case based on a lack of standing; however, the lead opinion in the case expressed concern with relying on general duties of Foster to waive immunity under *Ex parte Young*. *Okpalobi*, 244 F.3d at 419. Because Section 250.007 is not a private cause of action statute like the statute in *Okpalobi*, it is not instructive.

2. Texas law establishes "some connection" between the Attorney General and Section 250.007.

Even if the City is similarly situated, there are additional bases that demonstrate "some connection." In a lawsuit that involves the validity or constitutionality of a municipal ordinance or state law, the Attorney General must receive notice of the proceeding and is entitled to be heard. Tex. Civ. Prac. & Rem. Code § 37.006(b).[6] The Third Court of Appeals recently held that this provision gives the Attorney General the right to intervene in litigation as a party plaintiff where state law preemption of a municipal ordinance is at issue. *Tex. Assoc. of Bus., et al. v. City of Austin, et al.*, 2018 WL 6005551, *4 (Tex.App.—Austin, 2018) (upholding the Attorney General's standing to intervene in litigation brought by private parties who challenged the City's earned sick leave ordinance on preemption and other grounds).

---

[6] The Attorney General relied on this statutory provision to intervene in the *Zaatari* and *Texas Association of Business* cases.

The Attorney General also has at least some connection to Section 250.007—if not direct enforcement authority over it—by virtue of his authority under the TFHA. If a potential discriminatory housing practice involves the legality of a land use law or ordinance, the Texas Workforce Commission (Commission) is deprived of jurisdiction and must "immediately refer the matter to the attorney general for appropriate action." Tex. Prop. Code §301.090. If the Commission receives a complaint that alleges a landlord refuses to accept HCV and that the refusal has discriminatory impact based on race or other state-recognized protected class, Section 250.007 would be implicated. Because it is likely the Commission and the Attorney General will consider Section 250.007 a law covered by § 301.090, the Commission will be required to refer the matter to the Attorney General. This statutory authority allows the Attorney General to prevent the investigation of certain housing discrimination complaints. Additionally, if the individual who filed the complaint refiles with the FHO, the Attorney General will likely attempt to use his general enforcement authority or Civil Practice and Remedies Code Section 37.006 to prevent the City from investigating.

B. The City established the Attorney General's demonstrated willingness to enforce.

The Attorney General's habit of suing or intervening in litigation against the City chills its lawful enforcement of the Ordinance and impairs the City's ability to

fulfill the command that it affirmatively further fair housing. As recognized by the Attorney General, a "demonstrated willingness to exercise" the official's duty is sufficient to establish an exception to immunity under *Ex parte Young*. AT Br 22.[7] Yet, contrary to that recognition, the Attorney General asserts that the recent lawsuits and interventions are insufficient to demonstrate a willingness to enforce. *Id.*, at 22. This assertion is without merit.

In order for the City to establish an *Ex parte Young* waiver of immunity, the Attorney General asks this Court to require the City to show that the Attorney General took an affirmative step to threaten *the City* as it relates to *this particular state law*. AT Br 22. However, such a requirement would require the City wait to seek a declaration (or injunction) regarding the constitutional validity of Section 250.007 until it is sued again or until the Attorney General issues a press release or sends a letter, which is contrary to Supreme Court precedent. *See Steffel v. Thompson*, 415 U.S. 452, 459 (1974). The Attorney General's proposed requirement is untenable because there is no statutory requirement that the Attorney General give the City notice before filing suit (under his general enforcement authority) or

---

[7] In the event the Court requires the City to establish a "threat of enforcement", the Attorney General's conduct is sufficient to reach that threshold because past enforcement against the same conduct is evidence that the threat of enforcement is not illusory. *See Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 164 (2014).

intervening in litigation as a party-plaintiff (under Civil Practice and Remedies Code §37.006).

The Attorney General, by his own admission, has a particular duty to enforce the supremacy of state law over municipal ordinances. Filing suit against the City or intervening in litigation because the City enforces the Ordinance is the same conduct the Attorney General challenges in the *Zaatari* and *Texas Association of Businesses* lawsuits.[8] For this reason, it was reasonable for the City (and the district court) to rely on the Attorney General's past litigation-related behavior to establish a demonstrated willingness to enforce. As a result, the City established his demonstrated willingness to enforce the supremacy of state law over municipal ordinances.

## CONCLUSION AND PRAYER FOR RELIEF

The Court should affirm the district court's order denying the Attorney General's motion to dismiss as to sovereign immunity, and remand for further proceedings.

---

[8] The pre-enforcement suit against the City in *Texas v. Travis County, Texas* aimed to curb City policy preempted by state law, which would also be the same conduct as a suit against the City as it relates to the Ordinance.

RESPECTFULLY SUBMITTED,

ANNE L. MORGAN, City Attorney
MEGHAN L. RILEY, Chief, Litigation

s/ Patricia L. Link
PATRICIA L. LINK
Assistant City Attorney
State Bar No. 24041343
patricia.link@austintexas.gov
HANNAH M. VAHL
State Bar No. 24082377
hannah.vahl@austintexas.gov

City of Austin-Law Department
P.O. Box 1546
Austin, Texas 78767-1546
Telephone:  (512) 974-2173
Facsimile:   (512) 974-1311

**ATTORNEYS FOR
PLAINTIFF-APPELLEE**

## CERTIFICATE OF SERVICE

On February 15, 2019, this brief was served via CM/ECF on all registered counsel and transmitted to the Clerk of the Court. Counsel further certifies that: (1) any required privacy redactions have been made in compliance with Fifth Circuit Rule 25.2.13; and (2) the electronic submission is an exact copy of the paper document in compliance with Firth Circuit Rule 25.2.1.

s/ Patricia L. Link
PATRICIA L. LINK

## CERTIFICATE OF COMPLIANCE

1.     This brief complies with the type-volume limitations of Fed. R. of App. P.

32(a)(7)(B) because this brief contains 3,173 words, excluding the parts of the brief

exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.     This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5)

and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has

been prepared in a proportionally spaced typeface using Microsoft Word in 14 point

Times New Roman.

3.     The undersigned understands that a material misrepresentation in completing

this certificate, or circumvention of the type-volume limits in 5th Cir. R. 32.3, may

result in the Court's striking of the brief and imposing sanctions against the person

signing the brief.


s/ Patricia L. Link
PATRICIA L. LINK