IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| DONNA LANGAN, TERESA DE BARBARAC, and ALEXANDRA CARSON, | § § § | |
| Plaintiffs, | § § | |
| v. | § § | 1:20-CV-275-RP |
| GREG ABBOTT, *in his Official Capacity as Governor of Texas*, and KEN PAXTON, *in his Official Capacity as Attorney General of Texas*, | § § § § § | |
| Defendants. | § § | |

## ORDER

Before the Court is Defendants Greg Abbott, in his official capacity as Governor of Texas, ("Governor Abbott") and Ken Paxton's, in his official capacity as Attorney General of Texas, ("Attorney General Paxton") (together "Defendants") motion to dismiss Plaintiffs Donna Langan ("Langan"), Teresa De Barbarac ("Barbarac"), and Alexandra Carson's ("Carson") (together "Plaintiffs") amended complaint, (Am. Compl., Dkt. 10). (Mot., Dkt. 11). Having considered the parties' submissions, the record, and the applicable law, the Court will grant Defendants' motion to dismiss.

### I. BACKGROUND

Plaintiffs are transgender persons, currently and formerly incarcerated by the Federal Bureau of Prisons ("FBOP"). (Am. Compl., Dkt. 10, at 1). They bring claims challenging the constitutionality of Texas Family Code § 45.103 ("Section 45.103"), which prohibits people from legally changing their names to comport with their genders while they are incarcerated or on community supervision, and within two years of release. (*Id.*). Section 45.103 states:

> (a) The court shall order a change of name under this subchapter for a person other than a person with a final felony conviction or a person subject to the registration requirements of Chapter 62, Code of Criminal Procedure, if the change is in the interest

1

>or to the benefit of the petitioner and in the interest of the public.
>(b) A court may order a change of name under this subchapter for a person with a final felony conviction if, in addition to the requirements of Subsection (a), the person has:
>>(1) received a certificate of discharge by the Texas Department of Criminal Justice or completed a period of community supervision or juvenile probation ordered by a court and not less than two years have passed from the date of the receipt of discharge or completion of community supervision or juvenile probation; or
>>(2) been pardoned.
>
>(c) A court may order a change of name under this subchapter for a person subject to the registration requirements of Chapter 62, Code of Criminal Procedure, if, in addition to the requirements of Subsection (a), the person provides the court with proof that the person has notified the appropriate local law enforcement authority of the proposed name change. In this subsection, "local law enforcement authority" has the meaning assigned by Article 62.001, Code of Criminal Procedure.

Langan is a transgender woman who is incarcerated at FMS Carswell, a federal prison, and is serving a sentence of life without parole. (Am. Compl., Dkt. 10, at 2). Consistent with her gender identity, FBOP houses her at a facility designated for women. (*Id.*). However, she continues to be legally identified by a masculine name. (*Id.*).

Barbarac is a transgender woman who is currently incarcerated at FCI Texarkana. (*Id.*). FBOP acknowledges that she is transgender. (*Id.* at 11). Plaintiffs plead that while Barbarac is sometimes referred to by her appropriate name in documents and by staff and other prisoners, because her legal name still reflects her deadname (or former name) many official documents, including the medical, mail, commissary, and phone systems, use her deadname. (*Id.* at 2, 11). Plaintiffs plead that Barbarac harbors intense fear about not being able to change her name upon release because law enforcement previously accused her of stealing a man's car because of the mismatch between her identity documents and appearance, as the car was titled to her in her deadname. (*Id.* at 11). Barbarac pleads that she has previously been denied jobs on the basis of her name not conforming to her gender presentation. (*Id.*). Barbarac similarly pleads she was previously denied medical treatment for the same reason. (*Id.*) ("[S]he almost died because EMT's were

unwilling to touch her, once they realized she was transgender by looking at her identity documents.").

Carson is a transgender woman who was released from the federal prison system on August 28, 2018. (*Id.* at 3). She still lives in Texas. (*Id.*). Plaintiffs plead that she will be on parole until 2023 and will not be able to change her name until at least two years after her parole ends under Section 45.103. (*Id.*). Plaintiffs plead that until then Carson's appearance and gender will be at odds with the name and gender marker on her official ID and official documents, which incorrectly identify her as a man and show her deadname. (*Id.* at 12). As a result, Plaintiffs plead that Carson will be exposed to suspicion, scrutiny, contempt, and danger in her community, including "very real risks of violence." (*Id.* at 3, 12).

Plaintiffs plead that Section 45.103 prevents Langam, Barbarac, and Carson from legally changing their names, causing them acute and ongoing emotional and psychological distress, humiliation, and other risks to their physical and mental health. (*Id.* at 12).

Based on these allegations, Plaintiffs bring causes of action under the Eight Amendment, asserting that the impact of Section 45.103 on Plaintiffs constitutes cruel and unusual punishment. (*Id.* at 16). Plaintiffs bring their claims against Governor Abbott and Attorney General Paxton. (*Id.* at 3). Plaintiffs seek a declaratory judgment that Section 45.103 is unconstitutional as applied to Plaintiffs and people similarly situated and a permanent injunction enjoining Defendants from denying Plaintiffs and those similarly situated the right to change their legal names. (*Id.* at 17). Defendants filed a motion to dismiss the claims against them under Federal Rule of Civil Procedure 12(b)(1). (Mot. Dismiss, Dkt. 11).

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(1) allows a party to assert lack of subject-matter jurisdiction as a defense to suit. Fed. R. Civ. P. 12(b)(1). Federal district courts are courts of limited

jurisdiction and may only exercise such jurisdiction as is expressly conferred by the Constitution and federal statutes. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). A federal court properly dismisses a case for lack of subject matter jurisdiction when it lacks the statutory or constitutional power to adjudicate the case. *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998). "The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001), *cert. denied*, 536 U.S. 960 (2002). "Accordingly, the plaintiff constantly bears the burden of proof that jurisdiction does in fact exist." *Id*. In ruling on a Rule 12(b)(1) motion, the court may consider any one of the following: (1) the complaint alone; (2) the complaint plus undisputed facts evidenced in the record; or (3) the complaint, undisputed facts, and the court's resolution of disputed facts. *Lane v. Halliburton*, 529 F.3d 548, 557 (5th Cir. 2008).

### III. DISCUSSION

Defendants move to dismiss Plaintiffs' amended complaint on the grounds that (1) the Eleventh Amendment bars Plaintiffs' claims and (2) Plaintiffs lack standing.

The Eleventh Amendment typically deprives federal courts of jurisdiction over "suits against a state, a state agency, or a state official in his official capacity unless that state has waived its sovereign immunity or Congress has clearly abrogated it." *Moore v. La. Bd. of Elementary & Secondary Educ.*, 743 F.3d 959, 963 (5th Cir. 2014). However, under the *Ex parte Young* exception to sovereign immunity, lawsuits may proceed in federal court when a plaintiff requests prospective relief against state officials in their official capacities for ongoing federal violations. 209 U.S. 123, 159–60 (1908). Thus, "[t]here are three basic elements of an *Ex parte Young* lawsuit. The suit must: (1) be brought against state officers who are acting in their official capacities; (2) seek prospective relief to redress ongoing conduct; and (3) allege a violation of federal, not state, law." *Williams ex rel. J.E. v. Reeves*, 954 F.3d 729, 736 (5th Cir. 2020).

4

"For the [*Ex parte Young*] exception to apply, the state official, 'by virtue of his office,' must have 'some connection with the enforcement of the [challenged] act, or else [the suit] is merely making him a party as a representative of the state, and thereby attempting to make the state a party.'" *City of Austin v. Paxton*, 943 F.3d 993, 997 (5th Cir. 2019), cert. denied sub nom. *Austin, TX v. Paxton, Att'y Gen. of Tex, et al.*, No. 19-1441, 2021 WL 78079 (U.S. Jan. 11, 2021) (quoting *Young*, 209 U.S. at 157); *see also In re Abbott*, 956 F.3d 696, 708 (5th Cir. 2020) ("*Ex parte Young* allows suits for injunctive or declaratory relief against state officials, provided they have sufficient 'connection' to enforcing an allegedly unconstitutional law."). Absent such a connection, "the suit is effectively against the state itself and thus barred by the Eleventh Amendment and sovereign immunity." *Id.* at 709.

While "[t]he precise scope of the 'some connection' requirement is still unsettled," the Fifth Circuit has stated that "it is not enough that the official have a 'general duty to see that the laws of the state are implemented.'" *Texas Democratic Party*, 961 F.3d at 400–01 (quoting *Morris v. Livingston*, 739 F.3d 740, 746 (5th Cir. 2014)). And "[i]f the official sued is not 'statutorily tasked with enforcing the challenged law,' then the requisite connection is absent and '[the] Young analysis ends.'" *Abbott*, 956 F.3d at 709 (quoting *City of Austin*, 943 F.3d at 998). Where, as here, "no state official or agency is named in the statute in question, [the court] consider[s] whether the state official actually has the authority to enforce the challenged law." *City of Austin*, 943 F.3d at 998. Neither a specific grant of enforcement authority nor a history of enforcement is required to establish a sufficient connection. *Id.* at 1001; *Air Evac EMS, Inc. v. Tex., Dep't of Ins., Div. of Workers' Comp.*, 851 F.3d 507, 519 (5th Cir. 2017). There need only be a "scintilla of enforcement by the relevant state official" for *Ex parte Young* to apply. *City of Austin*, 943 F.3d at 1002 (quotations omitted). Actual threat of or imminent enforcement is "not required." *Air Evac*, 851 F.3d at 519.

Defendants argue that neither Governor Abbott nor Attorney General Paxton are mentioned in Section 45.103. (Mot., Dkt. 11, at 9). As a result, Defendants argue that they are not tasked with enforcement of Section 45.103. (*Id.* at 9, 11). Instead, Defendants argue that Section 45.103 "contemplates a judge's role in the statute's administration" as the judiciary is tasked with evaluating petitions for name changes according to the statute. (*Id.* at 9); TEX. FAM. CODE § 45.103. As a result, Defendants argue that the judiciary, or more specifically Texas state courts, are statutorily tasked with enforcement of Section 45.103 and suggest that judges would be the proper defendants in this action.[1] (Mot. Dismiss, Dkt. 11, at 9, 11).

In their response, Plaintiffs do not argue that Governor Abbott is a proper Defendant. Because Plaintiffs have not demonstrated that Governor Abbott has a sufficient connection to the enforcement of Section 45.103, Plaintiffs' claims against Governor Abbott are barred by Eleventh Amendment sovereign immunity.

Plaintiffs argue that Attorney General Paxton has sufficient connection to the enforcement of Section 45.103 because he has previously intervened in judicial pronouncements regarding same-sex marriage and has opposed transgender rights, including "pressuring Target over its store policies, joining multi-state lawsuits, threatening the Fort Worth school district, and championing 2017's 'Bathroom Bill.'" (Resp., Dkt. 15, at 2, 6; Am. Compl., Dkt. 10, at 13–16). Plaintiffs also argues that Attorney General Paxton is a proper Defendant because the "attorney general has a constitutional

---

[1] Plaintiffs respond that interpreting the judiciary as statutorily tasked with enforcing Texas Family Code 45.103 "leads to an absurd result" where unconstitutional statutes would be "affirmatively challenged by lawsuits against the judiciary." (Resp., Dkt. 15, at 3). The Court agrees that this appears to be a strange result. However, the Court notes that in some cases, like this one, statutes may indicate that they are to be enforced by judges for purposes of *Ex parte Young* analysis. *See* TEX. FAM. CODE 45.103(a) ("The *court* shall order a change of name under this subchapter.") (emphasis added); *Daves v. Dallas Cnty.*, No. 18-11368, 2020 WL 7693744, at *12 (5th Cir. Dec. 28, 2020) ("Under Texas law, '[t]he amount of bail to be required in any case is to be regulated by the court, judge, magistrate or officer taking the bail.' . . . The Magistrate Judges have a sufficient connection to invoke the *Ex parte Young* exception to sovereign immunity because they have a concrete statutory duty to enforce the challenged law.") (quoting TEX. CODE CRIM. PRO. art. 17.15).

6

duty to defend challenges to state law" and has authority to bring suit to enforce Section 45.103. (*Id.* at 3, 5) (citing *In re State*, 489 SW 3d 454, 456 (Tex. 2016) (Willett, J., concurring)).

In *City of Austin v. Paxton*, the plaintiff challenged a state law that invalidated a city ordinance by suing Attorney General Paxton. 943 F.3d at 996. The Fifth Circuit held that "the mere fact that the Attorney General has the authority to enforce [the state statute] cannot be said to 'constrain' the City from enforcing the Ordinance. The [Plaintiff] simply provides no evidence that the Attorney General may 'similarly bring a proceeding' to enforce [the state statute]: that he has chosen to intervene to defend different statutes under different circumstances does not show that he is likely to do the same here." *Id.* at 1001–02.

As a result, under *City of Austin*, Attorney General Paxton's ability to bring suit to enforce Section 45.103 is insufficient to overcome sovereign immunity. Similarly, Attorney General Paxton's efforts to oppose same-sex marriage and transgender rights in other situations does not rise to the necessary level under current Fifth Circuit precedent to demonstrate that Attorney General Paxton would intervene in a case to defend Section 45.103. Accordingly, Plaintiffs have not demonstrated that Attorney General Paxton has a sufficient connection to the enforcement of Section 45.103 and therefore Plaintiffs' claims against him are barred by Eleventh Amendment immunity.

Because the Court finds that Plaintiffs' claims against Defendants are barred by the Eleventh Amendment, the Court does not explicitly reach the issue of standing but notes that "Article III standing analysis and *Ex parte Young* analysis 'significantly overlap.'" *Id.* at 1002.

Plaintiffs have already amended their complaint once in response to a motion to dismiss. (Am. Compl., Dkt. 10). Although Federal Rule of Civil Procedure 15(a)(2) permits a court to grant leave to amend pleadings and "evinces a bias in favor of granting leave to amend, it is not automatic." *Matter of Southmark Corp.*, 88 F.3d 311, 314 (5th Cir. 1996) (internal quotation marks and citation omitted). Among other things, "a party must 'expressly request' leave to amend." *Law v.*

7

*Ocwen Loan Servicing, L.L.C.*, 587 F. App'x 790, 796 (5th Cir. 2014) (quoting *United States ex rel. Willard v. Humana Health Plan of Tex. Inc.*, 336 F.3d 375, 387 (5th Cir. 2003)). Even though "[a] formal motion is not always required," the requesting party must still "set forth with particularity the grounds for the amendment and the relief sought." *Willard*, 336 F.3d at 387. When a plaintiff fails to request leave to amend or indicate what might be added to the complaint if amendment were allowed, a district court may dismiss the cause of action with prejudice. *See Joseph v. Bach & Wasserman, L.L.C.*, 487 F. App'x 173, 178 (5th Cir. 2012). Plaintiffs have neither requested leave to amend their complaint nor indicated what they might add to an amended complaint. (*See* Resp. Mot. Dismiss, Dkt. 15). The Court therefore declines to *sua sponte* permit Plaintiffs to amend their complaint a second time.

## IV. CONCLUSION

Accordingly, **IT IS ORDERED** that Defendants' motion to dismiss, (Dkt. 11), is **GRANTED.** Plaintiffs' claims are **DISMISSED WITHOUT PREJUDICE**.

**SIGNED** on February 8, 2021.

                                                        ROBERT PITMAN
                                                        UNITED STATES DISTRICT JUDGE